Daniel W. SPAULDING, James T. Dorsey, Vivian L. Sanders, Reverend Vernon N. Dobson

v.

C. Stanley BLAIR, Secretary of State of the State of Maryland, et al.

Civ. No. 19933.

United States District Court
D. Maryland.

Oct. 16, 1968.

Fred E. Weisgal, Ronald M. Shapiro and Louis S. Sachs, Baltimore, Md., for plaintiffs.

Francis B. Burch, Atty. Gen. of Maryland, and Lewis A. Noonberg, Asst. Atty. Gen. of Maryland, Baltimore, Md., for C. Stanley Blair, Secretary of State, and Bd. of Sup'rs of Elections of Baltimore City.

Carl Frederick, Wheaton, Md., for Bd. of Sup'rs of Elections of Montgomery County.

THOMSEN, Chief Judge.

In this action, filed on September 30, 1968, plaintiffs seek a declaratory judgment and an injunction which would prevent the submission of a "referendum question" to the voters of the State of Maryland at the general election on November 5, 1968. They claim that the submission of the question would violate their rights under the Fourteenth Amendment.

Chapter 550 of the Acts of Maryland, 1963, created a Commission on Interracial Problems and Relations. Another Act adopted the same year, Chapter 228, prohibited discrimination in public accommodations, and gave certain powers and duties to the Commission with respect thereto. See Article 49B, sections 1–16, in the cumulative supplements to the Annotated Code of Maryland (herein collectively called "the Code").

In 1967 the General Assembly of Maryland passed the "Open Housing Bill", Acts of 1967, Chapter 385, approved by the Governor on April 21, 1967, to take effect June 1, 1967. It adds new sections 21 to 27, inclusive, to Article 49B of the Code, prohibiting certain forms of discrimination in the State based upon race, color, religious creed, national origin or ancestry with respect to housing and generally prohibiting discrimination in the sale, lease, rental or financing of housing units or housing accommodations (with certain exceptions) and in other respects; and giving the enforcement of these prohibitions to the Commission on Interracial Problems and Relations.

Following the passage of the Open Housing Bill, two groups of opponents began gathering signatures of persons who desired a referendum on the Bill, and later presented a petition for referendum to the Secretary of State, pursuant to Article XVI, sections 1 and 2 of the Constitution of Maryland, and Article 33, section 167 of the Code (which became Article 33, section 23–1 on July 1, 1967, see Acts of 1967, Chapter 392). The material portions of the Constitution and the statutes read as follows:

"Constitution of Maryland. Article XVI. *The Referendum*

"Section 1. Reservation of power of referendum in people; article self-executing; additional legislation.

"(a) The people reserve to themselves power known as The Referendum, by petition to have submitted to the registered voters of the State, to approve or reject at the polls, any Act, or part of any Act of the General Assembly, if approved by the Governor, or, if passed by the General Assembly over the veto of the Governor;

"(b) The provisions of this Article shall be self-executing; provided that additional legislation in furtherance thereof and not in conflict therewith may be enacted.

"Section 2. When laws to take effect; effect of filing of referendum petition.

"No law enacted by the General Assembly shall take effect until the first day of June next after the session at which it may be passed, unless it contain a Section declaring such law an emergency law and necessary for the immediate preservation of the public health or safety, and passed upon a yea and nay vote supported by three-fifths of all the members elected to each of the two Houses of the General Assembly; provided, however, that said period of suspension may be extended as provided in Section 3(b) hereof. If before said first day of June there shall have been filed with the Secretary of the State a petition to refer to a vote of the people any law or part of a law capable of referendum, as in this Article provided, the same shall be referred by the Secretary of State to such vote, and shall not become a law or take effect until thirty days after its approval by a majority of the electors voting thereon. * * *."

Code, "Article 33, *Elections, Referenda*

§ 167. [now 23–1]. Certification of referenda [now Questions]

"(a) *Constitutional amendments.* Whenever a proposed Constitution or constitutional amendment or other questions submitted for popular approval to the voters of the State or local subdivisions thereof, the Secretary of State shall certify the same to the supervisors of elections in the counties and the City of Baltimore, on or before the fourth Monday in the month of July. Thereupon the said supervisors shall include the same in the publication provided for in § 72 [now 8–5] of this article. * * *

\* \* \* \* \* \*

"(c) *Order of listing constitutional amendments and referenda on ballots*

# 151

*and ballot labels.*—The Secretary of State shall certify to the board of supervisors of elections of each county and of Baltimore City a list of the proposed constitutional amendments to be voted upon at any State-wide election and a separate list, if any, of any other State-wide referenda to be submitted to the voters. * * *"

The technical sufficiency of the petition for referendum and accompanying documents was denied by the Secretary of State, on advice of the Attorney General, but was sustained by the Court of Appeals of Maryland, *Secretary of State v. McLean,* 249 Md. 436, 239 A.2d 919 (decided March 7, 1968, opinion filed April 3, 1968), which affirmed the order of the Circuit Court for Harford County requiring the Secretary of State to refer to the vote of the people, pursuant to the provisions of the Constitution of Maryland, Chapter 385 of the Laws of 1967.

On July 19, 1968, the Secretary of State, one of the defendants herein, certified the referendum question to the other defendants, the Supervisors of Elections of the several counties and of Baltimore City, who have taken the necessary steps to place it on the ballot at the general election to be held on November 5, 1968.

Plaintiffs, who are Negro residents of Baltimore City, claim that the submission of the question to the voters, with the possibility of a "No" vote, violates the privileges and immunities and the equal protection clauses of the Fourteenth Amendment and conflicts with 42 U.S.C.A. § 1982.

Defendants have moved to dismiss the complaint on the grounds (1) that the Court has no jurisdiction to grant the relief requested, and (2) that the complaint fails to state a claim against defendants upon which relief can be granted.

1. It is not disputed that this Court has power to enjoin the submission to the voters of an ordinance which would be unconstitutional if passed. *Ellis v.*

*Mayor and City Council of Baltimore et al.,* 234 F.Supp. 945 (D.Md.1964), affirmed 352 F.2d 123 (4 Cir. 1965); *Otey v. Common Council of City of Milwaukee,* 281 F.Supp. 264 (E.D.Wis. 1968). Whether a three-judge court would be required to enjoin the submission of an unconstitutional statute need not be decided in this case, since both parties agree that Chapter 385 of the Acts of 1967 is constitutional.

■ Defendants contend that this case does not present a justiciable controversy for lack of ripeness. The Court does not agree. If the mere submission of the question to the voters should be held to deprive plaintiffs of any right guaranteed by the Federal Constitution, they would have standing to bring this action and the defense of non-justiciability for lack of ripeness would not be effective.

■ 2. On the other hand, the Court agrees with defendants that the complaint does not state a claim upon which relief can be granted. Plaintiffs' contention that the mere submission of the referendum question to the voters, pursuant to the provisions of the Maryland Constitution, would deprive plaintiffs of their rights under the Federal Constitution is supported neither by the authorities plaintiffs rely on (with one possible exception, discussed below), nor by a proper reading of the Maryland law, nor by the principles upon which our federal constitutional democracy is established.

The controlling case is *Reitman v. Mulkey,* 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967). That case involved Article 1, § 26 of the California Constitution, an initiated measure submitted to the people of California as Proposition 14 in a statewide ballot. Section 26 provided in part as follows:

"Neither the State nor any subdivision or agency thereof shall deny, limit or abridge, directly or indirectly, the right of any person, who is willing or desires to sell, lease or rent any

part or all of his real property, to decline to sell, lease or rent such property to such person or persons as he, in his absolute discretion, chooses." See 387 U.S. at 371, 87 S.Ct. 1627 at 1628.

The judgment of the California Court was that § 26 unconstitutionally involved the State in racial discrimination and was therefore invalid under the Fourteenth Amendment. Mulkey v. Reitman, 64 Cal.2d 529, 50 Cal.Rptr. 881, 413 P.2d 825.

Affirming that judgment, the majority of the Supreme Court of the United States said:

"There is no sound reason for rejecting this judgment. Petitioners contend that the California court has misconstrued the Fourteenth Amendment since the repeal of any statute prohibiting racial discrimination, which is constitutionally permissible, may be said to 'authorize' and 'encourage' discrimination because it makes legally permissible that which was formerly proscribed. But, as we understand the California court, it did not posit a constitutional violation on the mere repeal of the Unruh and Rumford Acts. It did not read either our cases or the Fourteenth Amendment as establishing an automatic constitutional barrier to the repeal of an existing law prohibiting racial discriminations in housing; nor did the court rule that a State may never put in statutory form an existing policy of neutrality with respect to private discriminations. What the court below did was first to reject the notion that the State was required to have a statute prohibiting racial discriminations in housing. Second, it held the intent of § 26 was to authorize private racial discriminations in the housing market, to repeal the Unruh and Rumford Acts and to create a constitutional right to discriminate on racial grounds in the sale and leasing of real property. Hence, the court dealt with § 26 as though it expressly authorized and constitutionalized the private right to discriminate. Third, the court assessed the ultimate impact of § 26 in the California environment and concluded that the section would encourage and significantly involve the State in private racial discrimination contrary to the Fourteenth Amendment.

"The California court could very reasonably conclude that § 26 would and did have wider impact than a mere repeal of existing statutes. Section 26 mentioned neither the Unruh nor Rumford Act in so many words. Instead, it announced the constitutional right of any person to decline to sell or lease his real property to anyone to whom he did not desire to sell or lease. Unruh and Rumford were thereby *pro tanto* repealed. But the section struck more deeply and more widely. Private discriminations in housing were now not only free from Rumford and Unruh but they also enjoyed a far different status than was true before the passage of those statutes. The right to discriminate, including the right to discriminate on racial grounds, was now embodied in the State's basic charter, immune from legislative, executive, or judicial regulation at any level of the state government. Those practicing racial discriminations need no longer rely solely on their personal choice. They would now invoke express constitutional authority, free from censure or interference of any kind from official sources. All individuals, partnerships, corporations and other legal entities, as well as their agents and representatives, could now discriminate with respect to their residential real property, which is defined as any interest in real property of any kind or quality, 'irrespective of how obtained or financed,' and seemingly irrespective of the relationship of the State to such interests in real property. Only the State is excluded with respect to prop-

erty owned by it." 387 U.S. at 376, 377, 87 S.Ct. at 1632.

The decision in Reitman v. Mulkey was relied on in Otey v. Common Council of the City of Milwaukee, supra, where the proposed ordinance contained similar prohibitory language, viz: "That the Common Council of the City of Milwaukee SHALL NOT enact any ordinance which in any manner restricts the right of owners of real estate to sell, lease or rent private property". See 281 F.Supp. at 267.

There is a clear distinction between (a) an ordinance, an act or a constitutional provision which "expressly authorized and constitutionalized the private right to discriminate" (387 U.S. at 376, 87 S.Ct. at 1631), and (b) the submission to the voters by way of referendum of a proposed act in which a State undertakes to prohibit certain discriminatory acts and to enforce such prohibition in a particular way. The latter, (b), is what is involved in the instant case. The mere submission of the referendum question does not create a new statutory right to discriminate, nor repeal any present statutory prohibition. The rejection of Chapter 385 by a "No" vote would not nullify the Thirteenth or Fourteenth Amendment, would not deprive plaintiffs of their rights under any federal statute, now existing or to become effective on January 1, 1969,[1] nor destroy any right plaintiffs now have under any Maryland statute. Submission of Chapter 385 to referendum would not prevent the State from adopting a new statute stronger or weaker than Chapter 385, at any time in the future.

Plaintiffs refer to the referendum as though it were a proposed "repeal of an Open Housing Law". It is clear, however, that Chapter 385 has not become a law and "shall not become a law or take effect until thirty days after its approval by a majority of the electors voting

thereon" at the election to be held on November 5, 1968. See Article XVI, Section 2 of the Maryland Constitution, quoted above. If the Court were to enjoin the holding of a referendum which meets the tests of the Maryland Constitution and statutes, Secretary of State v. McLean, supra, it is not clear when, if ever, under Maryland law, Chapter 385 of the Acts of 1967 would take effect. See Section 2 of Article XVI of the Maryland Constitution, quoted above. The vote on the referendum is a part of the State's legislative process, as was the passage of the bill by the General Assembly and its approval by the Governor. In that sense, the vote is State action. But neither the submission of the question to the voters nor a possible "No" vote in the referendum constitutes or would constitute action which violates plaintiffs' rights under the Federal Constitution. Moreover, in Reitman v. Mulkey, the majority opinion of the Supreme Court stated explicitly that the Court was not holding that a particular state statute prohibiting discrimination cannot be repealed. 387 U.S. at 376, 380–381, 87 S.Ct. 1627. Such a holding might have the effect of inhibiting future efforts to pass open housing legislation.

Plaintiffs rely on Holmes v. Leadbetter, Civil No. 31343 (E.D.Mich., Southern Div., August 16, 1968, unreported), in which Judge Smith enjoined the submission to the voters of the City of Detroit of an open housing ordinance which had been adopted by the City Council. The judge referred to the referendum as a "repeal" of the ordinance, and said that "the books are replete with instances where City Councils have refused to place propositions upon the ballots for various reasons". He cited a Michigan case which had denied a mandamus compelling a City Commission to either adopt an ordinance or submit it to the electors of the City. This Court is not familiar with Michigan practices,

---

1. The Federal Fair Housing Law, which constituted Title VIII of the 1968 Civil Rights Act, is effective on January 1, 1969. Public Law 90–284, 90th Cong., 2nd Sess., approved April 11, 1968.

and should not comment on that basis for the decision. But this Court cannot accept the position taken by Judge Smith later in his opinion that certain matters are no longer open to public discussion or to referendum or amendment in the manner provided by law.

This Court should consider the constitutionality of submitting Chapter 385 to referendum in terms of the historical context and the conditions existing prior to its enactment, the objectives of Chapter 385, the objectives of its proponents and opponents, and the ultimate effect of granting or refusing the requested injunction. See Reitman v. Mulkey, 387 U.S. at 373, 87 S.Ct. 1627.

No doubt many of the opponents of the Open Housing Bill were and are motivated by prejudice, which is abhorrent not only to plaintiffs and their counsel but to counsel who argued the case for defendants in this Court and in opposition to the technical sufficiency of the referendum petition in the Court of Appeals of Maryland. This Court accepts the fact that the discussion of the current referendum will cause distress to plaintiffs, and may increase feelings of frustration and prejudice in various communities. But the refusal to permit the submission of the referendum question to the voters would create feelings of frustration among the opponents of Chapter 385. It might well lead them to believe that they can only advance their views by violence rather than through public discussion and the ballot box. The prejudice which plaintiffs seek to dispel cannot be destroyed, and might be increased, by denying citizens of Maryland the right to vote on Chapter 385, a right which is guaranteed to them by their State Constitution. The proposed injunction would be contrary to the spirit of our constitutional democracy and the principles of our federal republic.

The complaint must be and it is hereby dismissed for failure to state a claim upon which the relief requested can or should be granted.