Daniel W. SPAULDING, James T. Dorsey, Vivian L. Sanders, Reverend Vernon N. Dobson, Appellants,

v.

C. Stanley BLAIR, Secretary of State of the State of Maryland, et al., Appellees.

No. 12906.

United States Court of Appeals Fourth Circuit.

Argued Oct. 24, 1968.

Decided Oct. 29, 1968.

Ronald M. Shapiro and Louis S. Sachs, Baltimore, Md. (Fred E. Weisgal, Baltimore, Md., on brief) for appellants.

Lewis A. Noonberg, Asst. Atty. Gen., of Maryland, (Francis B. Burch, Atty. Gen., of Maryland, on brief) for appellees.

Before SOBELOFF, BRYAN and WINTER, Circuit Judges.

SOBELOFF, Circuit Judge:

A number of Negro citizens brought a class action for declaratory and injunctive relief against the Secretary of State of Maryland and various election offi-

cials. The plaintiffs' objective was to prevent the submission of the open-housing enactment, known as Chapter 385, passed by the General Assembly at its 1967 session, to referendum at the general election on November 5, 1968. The plaintiffs alleged that the submission of the 1967 act to the electorate for approval or rejection would violate their privileges and immunities and deprive them of equal protection of the law as guaranteed by the Fourteenth Amendment to the Constitution of the United States.

The defendants moved in the District Court to dismiss on the grounds that (1) the case was not ripe and therefore nonjusticiable at this time, and (2) the plaintiffs failed to state a claim upon which relief could be granted. The defendants do not deny that the preliminary requirements for referendum as prescribed by Article XVI, Section 3, of the Maryland Constitution have been complied with. Indeed, the Court of Appeals of Maryland has so ruled. Secretary of State v. McLean, 249 Md. 436, 239 A.2d 919 (1968).

The District Court held that an actual controversy was present and the case was therefore ready for determination even though the plaintiffs might suffer no harm if the electorate should approve the open-housing legislation in November.[1] However, the court agreed with the defendants that the plaintiffs had failed to state a meritorious claim and dismissed the action.

We are also of the view that the action must be dismissed. Article XVI, Section 1, of the Maryland Constitution provides that "the people reserve to themselves power known as The Referendum, by petition to have submitted to the registered voters of the State, to approve or reject at the polls, any Act, or part of any Act of the General Assembly, if approved by the Governor, or, if passed by the General Assembly over the veto of the Governor." If Chapter 385 is properly referred for a vote of the people, the result is to prevent its becoming effective until 30 days after approval by the voters, for Article XVI, Section 2, of the Maryland Constitution so stipulates in these terms:

"No law enacted by the General Assembly shall take effect until the first day of June next after the session at which it may be passed. * * * If before said first day of June there .shall have been filed with the Secretary of State a petition to refer to a vote of the people any law or part of a law capable of referendum, as in this Article provided, the same shall be referred by the Secretary of State to such vote, and *shall not become a law or take effect* until thirty days after its approval by a majority of the electors voting thereon at the next ensuing election held throughout the State for Members of the House of Representatives of the United States. * * * *" (Emphasis added.)

The referendum procedure therefore is a fundamental part of the State's legislative process.[2]

---

1. The parties are in agreement that there is no question of ripeness, since the theory of the plaintiffs' suit is that the mere submission of Chapter 385 is a constitutionally forbidden present detriment to them. It is perhaps worth noting that in another aspect the case may not be ready for adjudication until the measure has been voted down, for if the voters approve it, the plaintiffs will have no ground for complaint. However, ripeness having been conceded, there is no occasion to consider this question further.

2. In McGinnis v. Board of Supervisors of Election of Harford County, 244 Md. 65,

222 A.2d 391, 393 (1966), Judge Hammond observed about Maryland's referendum procedure:

"By Art. XVI of the Constitution, the people of Maryland reserved to themselves the power to have submitted to the voters any act or part of an act of the General Assembly, and if a proper petition seeking a referendum is duly filed, the law 'shall not become a law or take effect until thirty days after its approval by a majority of the electors voting thereon * * *' (§ 2 of Art. XVI). This period of suspension, this period *when the law is not a law* * * *." (Emphasis added.)

864

■ No contention is made that a state may not constitutionally apportion its legislative power between elected representatives of the people and the people themselves. Nor is it suggested that Chapter 385, if approved by the voters, would be unconstitutional. In these circumstances, it must be concluded that a federal court is without power to enjoin a valid state legislative procedure.[3] It could not be maintained that the vote of a state legislator against the measure, or that the Governor's veto, could ever be enjoined by a federal court as a denial of equal protection to the appellants. Any such claim would necessarily rest upon the assertion of an affirmative duty on the State to enact open-housing legislation. The assertion would be untenable and indeed plaintiffs' counsel have frankly conceded that the State is not so obligated.[4] Likewise the people are under no obligation to adopt the proffered measure, and their participation in the legislative process under the reserved power cannot be enjoined.

■ The argument is advanced, however, that rejection of Chapter 385 at the polls would "encourage and authorize private discrimination in real estate transactions in violation of the rights guaranteed to plaintiffs by the Fourteenth Amendment and by 42 U.S.C.A. § 1982." Plaintiffs seek to draw support for this thesis by reliance on Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967), invalidating "Proposition 14" which undertook to insert into the California Constitution the guarantee of a right to any person to discriminate in selling or leasing his real property.

The Supreme Court's decision in *Reitman* plainly does not govern this case, for the measure struck down there differs sharply from our referendum. In contrast to California's "Proposition 14," the referendum now before us, whether resulting in approval or rejection of Chapter 385, will not create a state constitutional right to discriminate. The Maryland General Assembly, unlike the California legislature under Proposition 14, will remain free to pass open-housing legislation in the future. Significantly, California's measure, as the Supreme Court pointed out, impermissibly involved the state in private racial discrimination by expressly constitutionalizing a right to discriminate and forbidding the legislature to interfere with its exercise. In offering its voters the opportunity to approve or reject Chapter 385, Maryland embraces neither of these objectionable features.

■ It is earnestly contended on behalf of the plaintiffs that rejection of Chapter 385 by the voters would be tantamount to repeal of a law already adopted by the General Assembly and signed by the Governor. The argument runs that a state may not repeal open-housing legislation because the effect would be to make conduct legally permissible which had formerly been proscribed. We have already shown that under Maryland's referendum provisions Chapter 385 has never become effective. See footnote 2 and accompanying text. There is, therefore, no question here of the repeal of an existing law. Beyond this, however, even if rejection at the polls could be deemed a repealer, the Supreme Court was explicit in recognizing that a mere repealer of anti-dis-

3. The decision in Ellis v. Mayor and City Council of Baltimore, 234 F.Supp. 945 (D.Md.1964), aff'd, 352 F.2d 123 (4 Cir. 1965), is entirely consistent with our holding. In that case the submission of a City Council apportionment plan to referendum was enjoined, but only after the court determined that the proposed plan, if adopted by the electorate, would violate the Equal Protection Clause.

As above noted, the constitutionality of Chapter 385 is not questioned by either side.

4. See Reitman v. Mulkey, 387 U.S. 369, at 376, 87 S.Ct. 1627, at 1631 (1967), where the Supreme Court expressly adopted the California court's rejection of "the notion that the state was required to have a statute prohibiting racial discriminations in housing."

crimination legislation is not forbidden by the Fourteenth Amendment. As Justice White wrote in *Reitman* in expressing agreement with the Supreme Court of California:

> "Petitioners contend that the California court has misconstrued the Fourteenth Amendment since the repeal of any statute prohibiting racial discrimination, which is constitutionally permissible, may be said to 'authorize' and 'encourage' discrimination because it makes legally permissible that which was formerly proscribed. But as we understand the California court, it did not posit a constitutional violation on the mere repeal of the Unruh and Rumford Acts. It did not read either our cases or the Fourteenth Amendment as establishing an automatic constitutional barrier to the repeal of an existing law prohibiting racial discriminations in housing; nor did the Court rule that a State may never put in statutory form an existing policy of neutrality with respect to private discriminations." 387 U.S. at 376, 87 S.Ct. at 1631.

For the reasons stated, we hold that this court may not enjoin a state procedure which affords the electorate, acting in a legislative capacity, the opportunity to determine whether or not an open-housing provision shall be spread on the state's statute books. It is incontrovertible that a decision of the voters to forego the adoption of supporting legislation for the open-housing principle cannot diminish the rights of any individual or minority group to which they are entitled under federal constitutional or statutory provisions. See Jones v. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968); Fair Housing Title (Title VIII) of the Civil Rights Act of 1968, Pub.L. 90–284, 82 Stat. 81. If the referendum purported to have this effect the rationale of *Reitman* would forbid it. By the same token, since the submission of Chapter 385 and its possible defeat cannot derogate from constitutionally guaranteed rights, the referendum cannot be enjoined.

We hold as we do because the continued vitality of our federalism depends in large measure on the states' legislative processes being exempt from federal court constraints to the extent that the states do not significantly involve themselves in deprivations of fundamental rights. All we decide here is that holding the referendum is neutral and even if the voters should fail to adopt the measure this would not constitute such forbidden involvement.[5] Our decision thus signifies no triumph for those who would wish to deprive minorities of their federally protected right to be free of private as well as public discrimination in the sale or lease of real estate.

Affirmed.

---

5. It is interesting to recall that during the period of National Prohibition, Maryland, unlike other states, chose not to enact a state prohibition statute, yet the federal law was not impaired thereby and was consistently enforced in the federal court.