In re Protest to REFERENDUM PETITION NO. 1968–I OF the CITY OF NORMAN.

No. 43404.

Supreme Court of Oklahoma.

July 14, 1970.

Rehearing Denied Oct. 20, 1970.

Maurice Merrill, Norman, for appellants.
William Christian, Norman, for appellees.

HODGES, Justice.

An ordinance numbered 2107 was enacted by the legislative body of the City of Norman, Oklahoma, on November 5, 1968, without an emergency clause. Thereafter a referendum petition was circulated referring the ordinance to a vote of the people of Oklahoma's 4th largest city affecting a suspension of the ordinance. Hearing was held by the city clerk on a protest lodged against the referendum petition challenging its sufficiency. The city clerk, upon hearing, determined the referendum petition sufficient and protestors brought this action in the nature of an appeal, seeking reversal of the final order of the city clerk.

This cause was assigned to a referee of this court for the purpose of hearing and for findings of facts. The parties appeared before the Referee and entered into a stipulation concerning requirements of the referendum having been met with the exceptions listed in assignments of error, statutes of the state controlling, judicial notice taken of Federal decennial census, and certain evidentiary facts.

The assignments of error by Appellants are:

(1) Referendum petition is defective in form, because an exact copy of the title and text of ordinance 2107 was not set out therein as required by 34 O.S.1961, Section 1, in that the size type is so small as to be unreadable.

(2) Referendum petition is insufficient because the margins on the petition do not comply with the requirements of 34 O.S.1961 § 4.

(3) Referendum petition is insufficient because it does not comply with Const. Art. 5 §§ 1, 2, 3, and 4 and further

fails to comply with 34 O.S.1961 §§ 2, 8, and 51, and for as much as the ordinance sought to be referred is an administrative ordinance enacted to provide effective remedies for individual rights guaranteed by the Thirteenth and Fourteenth Amendments to the Constitution of the United States, against which administrative acts referendum will not lie.

(4) The entire proceeding sought under the referendum petition is a nullity because of violation of Const. Art. 5 § 1, Art. 18 §§ 4(b) and 4(d); violation of 34 O.S.1961 §§ 8 and 51 and violation of 26 O.S.1961 § 501 which violations constitute "corruption in making and procuring and submitting initiative and referendum petitions", forbidden by Const. Art. 5 § 8.

(5) That the petition cannot be effective to refer the ordinance to which it is directed to a vote of the people of the municipality because the purpose of the ordinance is to safeguard the rights of citizens guaranteed by the Thirteenth and Fourteenth Amendments to the Constitution of the United States, and that certain acts done by officials of the affected municipality constitute state action prejudicial to the position of those citizens desiring the legislation which was suspended by the referendum petition. The ordinance to which the referendum petition pertains is commonly characterized as a fair housing ordinance.

The first specification of error goes to the form of the referendum petition, urging as a fatal defect the alleged failure of the petition to contain an exact copy of the title and text of the measure to which the petition is directed, as required in 34 O.S. 1961, § 1. The complaint goes solely to the legibility of ordinance 2107 as photographically reproduced in the petition form, by which the type was reduced to 4 point size. Appellants urge that the ordinance, scaled down, renders perception by a person of ordinary eyesight impossible without magnification.

■ Certainly the reading of the ordinance as presented in the petition is tedious. Yet it is legible. We are unable to agree with the appellants' contention that a writing which is tiresome to read is ipso facto fraudulent, corruptive or deceptive. The issue is one of first impression and no standard for the size of type has heretofore been enunciated. The duty devolving upon the correlative legislative branch of government under Const. Art. 5 § 8 causes this court to feel reluctant to adjudicate invalidity of this referendum petition on technical grounds, as technical errors are to be disregarded if the intended purpose can be attained. 34 O.S.1961, § 24. Ruth v. Peshek, 153 Okl. 147, 5 P.2d 108. We must however, in conformance with the intent of the legislature, state that a 4 point type borders on the unreadable by those with some defect in eyesight and strains the visual acuity of the normal, and while not reversible error in the present case, it is discouraged.

■ The statutory purpose for the size of margins is to allow binding of the petitions. We find this purpose had been met, and if a violation it is only a technical one. The opinion promulgated by this court in Community Gas and Service Company v. Walbaum, Okl., 404 P.2d 1014, is controlling. That decision concerns an initiative petition and declares that clerical and technical defects may and should be disregarded if there has been substantial compliance within the direction of 34 O.S.1961, § 24.

■ In the third specification of error by appellants the subject ordinance is denominated an administrative ordinance. Appellants then urge that the ordinance, being administrative in nature, is not subject to referendum process. Referendum process will only serve to suspend legislative enactments as distinguished from administrative enactments or resolutions.

The theory urged by protestors in support of their proposition that the ordinance is administrative and not legislative is based upon the premise that state legislative action carrying into effect provisions of the Federal Constitution are merely administrative. The rule for classifying ordinances as legislative acts and not administrative acts is set out in Brazell v. Zeigler, 26 Okl. 826, 110 P. 1052. There the court held that an enactment by a municipal council is said to be "law" or "municipal legislation" as distinguished from "administrative legislation" when it prescribes a uniform rule of civil conduct permanent in nature, and universal in application, and is not merely transient in scope. The court said if the action of the council was administering or carrying into execution a law already made then it was exercising an administrative function, which is not subject to the referendum process.

Ordinance 2107 by its terms prevents discrimination in employment, public accommodations and housing on grounds of race, color, religion or national origin under certain specified conditions. It creates a forum and a procedure for hearing controversies arising from civil conduct, and for resolution of such controversies. The ordinance is permanent in nature, uniform in application, and is not designed to accomplish a transient purpose. The ordinance creates an enforceable right not otherwise available. In light of its purpose, design and intent, the impact and function of the ordinance can scarcely be said to be administrative. The state is not bound by the United States Constitution to affirmatively forbid private racial discrimination. The state is permitted a neutral position. Reitman v. Mulkey, 387 U.S. 369, 380, 87 S.Ct. 1627, 18 L.Ed.2d 830, 838. We conclude that Ordinance 2107 cannot be characterized as administrative and is thus subject to the referendum process.

As a facet of the third allegation of error appellants further contend that the City of Norman owes a special duty to enact an ordinance such as 2107 because of historical racial imbalance. By stipulation appellants introduced into the record the census figures from 1890 to 1960, pertaining to Norman and the surrounding general area. There appears to exist a variance in the ethnic composition of the populace as between the general area of Norman and the surrounding general areas. Appellants contend this variance is inexplicable on an economic, industrial or any other natural basis and urge the probative value of the variance as prima facie proof of purposeful discrimination on the grounds of color. Appellants cite in support of this contention Norris v. Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074; Patton v. Mississippi, 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76; Cassell v. Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839; Eubanks v. Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991; Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 and Arnold v. North Carolina, 376 U.S. 773, 84 S.Ct. 1032, 12 L.Ed.2d 77. These criminal cases are concerned with deprivation of constitutional rights relating to systematic exclusion from state, grand and petit juries on racial grounds or exclusion of classes composed of persons having a common foreign ancestry. Upon proof by defendants in these criminal cases of total exclusion or only token representation of ethnic groups, a prima facie case was made to shift the burden of proof to the state to account for the apparent systematic ethnic exclusion. The cited cases accurately express the law as it has existed since 1880 and in Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664; and as declared in this jurisdiction in Smith v. State, 4 Okl.Cr. 328, 111 P. 960.

The record upon which appellants here rely demonstrates only that the populace of the vicinity of the municipality here involved is more predominantly white than is true of neighboring vicinities. Appellants urge that the existence of the anomaly is prima facie evidence of private racial discriminations. They argue that it is such a dimension and uniformity to constitute state action by a legislative arm

of the state encouraging racial discrimination. An anomaly in racial distribution is not ipso facto probative of racial discrimination. Inclusion of the census figures in the record to show racial imbalance cannot constitute a prima facie case to shift the burden of proof. Counsel for petitioners in his brief has interpreted these exhibits rather fully, toward a conclusion in furtherance of his advocacy, but the record contains no evidence of private racial discrimination.

█ The fourth and fifth allegations of error share a common theory and will be considered together. Basically the error urged is that certain acts by city officers of the municipality relating to the referendum, was a corruption of the referendum process and encouraged unconstitutional acts of private discrimination thereby constituting affirmative and purposeful state action, which is prohibited by the equal protection clause of the Fourteenth Amendment of the Federal Constitution, Poindexter v. Louisiana Financial Assistance Comm., D.C., 275 F.Supp. 833, affirmed per curiam 389 U.S. 571, 88 S.Ct. 693, 19 L.Ed.2d 780, and Art. 5, Section 8 of our Constitution and 26 O.S.1961, Section 501.

Briefly the constructively corrupting acts alleged are that Commissioner Remy of the municipal legislative body sought advice from Mr. Haas, part time municipal legal counsel, through the office of the chief executive officer of the city concerning laws governing referendum petitions.

The commissioner sought to be advised: (1) whether the state statutes of referendum petition governed such petition relating to municipal ordinances: (2) how a referendum petition should be designated and numbered; (3) with whom or in what office should a true and exact copy of a proposed referendum petition be filed before circulation for signatures of electors; and (4) with what office and officer of the municipality the circulated petition counterparts should be filed. By supplementary letter dated October 31, 1968, Commissioner Remy sought to be advised

on two additional facets of the law governing referendum petitions, asking what would be the date of the "next succeeding general election" to be used in preparation of a referendum petition and what number equals twenty-five per centum of the total number of votes cast at the next preceding election. Mr. Haas responded directly to Commissioner Remy by two letters.

Thereafter by letter dated November 19, 1968, Commissioner Remy sought additional advice through the office of the city manager, propounding four questions and asking that they be answered by Mr. Haas. The latter four queries are:

"(1) Is such petition 'in form as required by the statutes' within the meaning of Section 8 of Title 34 of Oklahoma Statutes 1961?

"(2) What are the duties of the City Clerk with respect to the signed original petition when and if filed in the City Clerk's office?

"(3) What is the latest calendar month, date and hour at which the original signed petition may be filed in the office of the City Clerk?

"(4) Is there any provision in the City Charter, or any other policy of the City of Norman, that would preclude the signing of this petition by an employee, or elected official, of the City of Norman?"

Mr. Haas deferred response to the latter inquiries and sought the authorization of the municipal council as a body for furnishing to a commission member, individually, the information sought. The city council formally directed him to respond to Commissioner Remy's queries. Mr. Haas then responded by letter with the following:

"(1) As of November 18, 1968, at 2:45 P.M. the Petition is in form required by Section 8 of Title 34, Oklahoma Statutes, 1961.

"(2) The pertinent sections of the statutes are herewith incorporated which cover the duties of the City Clerk once

the petition has been filed. Wherever the Secretary of State is referred to, you may substitute the name of the City Clerk. (See attachment).

"(3) In my opinion the petition must be filed by 2:45 on December 19, 1968, to be considered.

"(4) No. However, the City Manager did, prior to the last Primary Election, establish a policy that no city employee engage in political activity, because of the possible resulting consequences to the city."

Mr. Haas also furnished Commissioner Remy a photographically reproduced copy of 34 O.S.1961, Initiative and Referendum.

The record discloses with sufficient clarity Commissioner Remy's purpose. By stipulation there is included in the record a transcription of the related proceedings of the commission when it directed Mr. Haas to furnish Commissioner Remy with the data he sought. Commissioner Remy on that occasion forthrightly declared that he sought the information solicited in the four inquiries made November 19, 1968, for the benefit of "some 75 people that circulated a petition on two streets in Norman, this didn't include the whole town."

Appellants cite the case of Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L. Ed.2d 830 (1967), for the proposition that encouragement by the state or a governmental agency in the defeat or repeal of a measure pertaining to civil rights legislation and more particularly open housing laws, amounts to a denial of "the equal protection of the laws" guaranteed by the Fourteenth Amendment of the Constitution of the United States. The evil in the Reitman case that the court struck down was an amendment to the Constitution of the State of California initiated by the people of that State. This amendment prohibited the state, a state agency, or subdivision thereof, from performing any act which would deny the right of anyone to refuse to sell or lease all or any part of his real estate to such person or persons as he

should in his discretion choose. This provision was embodied in the basic state policy as part of the California Constitution. The court indicated that this involvement by the state did not amount to a neutral position, but encouraged racial discrimination. The amendment had the effect of repealing open housing legislation and other civil rights laws that were in effect at the time of its adoption and prohibited any future enactment of such legislation. In the body of the opinion the court stated, "Here we are dealing with a provision which does not just repeal an existing law forbidding racial discriminations. Section 26 was intended to authorize, and does authorize, racial discrimination in the housing market. The right to discriminate is now one of basic policies of the State." The court stated it is not a violation of equal protection of the laws under the fourteenth amendment for the state to take a neutral position regarding civil rights legislation. They further indicated that the repeal of a civil rights law placing the jurisdiction in the same position as before its passage is considered a neutral position. In the case of Spaulding v. Blair, 403 F.2d 862 (4th Cir. 1968), involving the Maryland open housing law, the court stated that the mere repeal of anti-discrimination legislation is not forbidden by the fourteenth amendment. It further indicated that the repeal of the Maryland open housing law will not create a state constitutional right to discriminate and unlike the California amendment, will allow the legislature to enact open housing laws in the future. In the instant case the rejection of 2107 by the voters of the City of Norman would not prevent the city council from enacting a stronger open housing and fair employment ordinance in the future. There is no prohibition of enactment of future legislation as in the Reitman case.

In the case of Spaulding v. Blair, 291 F.Supp. 149, the district court opinion of the circuit court case cited supra, the court stated that the rejection of the Maryland open housing law did not violate any rights

guaranteed under the thirteenth or fourteenth amendments of the Constitution. And in the case of Ranjel v. City of Lansing, 417 F.2d 321 (6th Cir. 1969), involving an action to enjoin a referendum on a spot zoning ordinance because it was racially motivated, the court stated that if the voters had a legal right to a referendum, their motive in exercising that right would be immaterial. Also, the court indicated the supremacy clause of the Constitution is applicable only when a state law conflicts with a valid federal law and in such event the latter controls, stating that a repeal of the spot zoning ordinance would not, even if it was racially motivated, conflict with the federal law.

The crux of the matter is not that of private discrimination which the courts have held not to be a violation of the thirteenth and fourteenth amendments but the degree of state or governmental interference or encouragement of private discrimination. Reitman, Spaulding, and Ranjel supra.

The right of initiative and referendum are basic to our constitutional concept of legislative action and as stated in the Ranjel case, "Initiative and Referendum is an important part of the state's legislative process. Being founded on neutral principles, it should be exempt from federal court constraints", citing Spaulding v. Blair, 403 F.2d 862 (4th Cir. 1968).

Expression of an opinion by an official of the city concerning the procedural and substantive statutory requirements relating to referendum petitions, standing alone, does not constitute city action of intervention contravening any constitutional guaranty under the Thirteenth and Fourteenth Amendments to the Constitution of the United States when such expression of opinion does not lend encouragement to acts of private racial discrimination.

Consideration of the propounded questions and the responses made quickly dispels any question of state participation in private racial discrimination to any degree. The responses were limited to recitation of laws governing referendum petitions generally. The contention by appellants of constructive corruption is not supported by any evidence of state involvement in private racial discrimination. The responses were scrupulously confined to the related inquiries, and carry no hint of prediliction. State action encouraging private racial discrimination is not revealed in this record.

The final order of the City Clerk of the City of Norman, Oklahoma, entered February 28, 1969, sustaining the sufficiency of the referendum petition which is the subject of this lawsuit is affirmed.

IRWIN, C. J., BERRY, V. C. J., and DAVISON, WILLIAMS, JACKSON, LAVENDER and McINERNEY, JJ., concur.

BLACKBIRD, J., concurs in results.