OSCN Found Document:OKLAHOMA'S CHILDREN, OUR FUTURE, INC. v. COBURN

 

 
 

 
 OKLAHOMA'S CHILDREN, OUR FUTURE, INC. v. COBURN
2018 OK 55
Case Number: 117020
Decided: 06/22/2018
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2018 OK 55, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

OKLAHOMA'S CHILDREN, OUR FUTURE, INC.; THE OKLAHOMA EDUCATION ASSOCIATION; THE OKLAHOMA STATE SCHOOL BOARDS ASSOCIATION; THE COOPERATIVE COUNCIL FOR OKLAHOMA SCHOOL ADMINISTRATION; THE ORGANIZATION OF RURAL OKLAHOMA SCHOOLS; THE OKLAHOMA ASSOCIATION OF CAREER AND TECHNOLOGY EDUCATION; THE UNITED SUBURBAN SCHOOLS ASSOCIATION; OKLAHOMA PTA; THE TULSA CLASSROOM TEACHERS ASSOCIATION; DR. KEITH BALLARD; JOELY FLEGLER; and TERANNE WILLIAMS, Petitioners/Protestants,
v.
DR. TOM COBURN, BROOKE MCGOWAN, and RONDA VUILLEMONT-SMITH, Respondents/Proponents.

ORIGINAL PROCEEDING TO DETERMINE THE LEGAL
SUFFICIENCY OF REFERENDUM PETITION NO. 25, STATE
QUESTION NO. 799

Â¶0 This is an original proceeding protest to determine the legal sufficiency of Referendum Petition No. 25, State Question No. 799. The referendum petition seeks to refer House Bill No. 1010xx, passed by the 56th Legislature of the State of Oklahoma, during the second special session of that Legislature, to the people of Oklahoma for their approval or rejection at the regular election to be held on November 6, 2018. The protestants allege the gist of the petition is insufficient and misleading. Further, the protestants allege the referendum petition is legally insufficient for failure to include an exact copy of the text of the measure, in violation of 34 O.S. Supp. 2015 Â§ 1. Upon review, we hold that the petition is legally insufficient and invalid.

REFERENDUM PETITION NO. 25, STATE QUESTION NO. 799, IS
DECLARED INVALID AND ORDERED STRICKEN FROM THE BALLOT

D. Kent Meyers and Melanie Wilson Rughani, Crowe & Dunlevy, Oklahoma City, Oklahoma, for Petitioners/Protestants.

Stanley M. Ward, Barrett T. Bowers, and Tanner B. France, Ward & Glass, L.L.P., Norman, Oklahoma, for Respondents/Proponents.

Mithun Mansinghani, Solicitor General, Randall J. Yates, Assistant Solicitor General, and Michael K. Velchick, Assistant Solicitor General, Oklahoma Attorney General's Office, for the State of Oklahoma.

COMBS, C.J.:

Â¶1 On May 1, 2018, Respondents/Proponents Dr. Tom Coburn, Brooke McGowan, and Ronda Vuillemont-Smith (collectively, Proponents) timely filed Referendum Petition No. 25, State Question No. 799 (the petition) with the Oklahoma Secretary of State. The petition seeks to refer HB 1010xx, passed by the 56th Legislature of the State of Oklahoma during its second special session, to the people of Oklahoma for their approval or rejection at the regular election to be held on November 6, 2018.

Â¶2 On May 17, 2018, several educators and organizations purporting to represent Oklahoma educational interests (collectively, Protestants) timely filed an original action protesting the legal sufficiency of the petition.[1] Protestants assert the gist of the petition is legally insufficient for several reasons, and further assert the petition is legally insufficient for failure to include an exact copy of the text of the measure as required by 34 O.S. Supp. 2015 Â§ 1.

Â¶3 There appears to be no dispute that HB 1010xx, the bill the petition seeks to refer to the people for approval or rejection, is a revenue bill. The primary effect of HB 1010xx is to raise revenue through tax changes imposed by five different mechanisms. Section 2 of HB 1010xx imposes an additional tax on cigarettes of 50 mills per cigarette. Sections 3-5 of HB 1010xx alter the taxes on little cigars to match those on cigarettes, a change from the lower rate at which they are currently taxed. Section 6 of HB 1010xx increases the motor fuel tax on gasoline and diesel fuel. Sections 7-8 of HB 1010xx raise the gross production tax incentive rate from 2% to 5% in the first 36 months of a well's production. Finally, Sections 9-15 of HB 1010xx impose an additional $5 per night occupancy tax on certain hotel and motel stays.[2]

Â¶4 There further appears to be no dispute that HB 1010xx was adopted in accordance with the requirements of Okla. Const. art. 5, Â§ 33.[3] It received the requisite three-fourths majority of both houses and was acted upon by the Governor. HB 1010xx has no emergency clause, and so cannot become effective until 90 days after its approval by the Legislature and it being acted upon by the Governor. Okla. Const. art. 5, Â§ 33.

Â¶5 Some of the revenue raised by HB 1010xx was evidently intended to provide the funding source for increases to teacher compensation found in another bill passed during the second special session, HB 1023xx. HB 1023xx, often referred to as the "teacher pay raise" bill, was made explicitly contingent on the "enactment" of HB 1010xx. The parties to this protest have raised questions concerning what effect a referendum petition against HB 1010xx might have on the effectiveness of HB 1023xx. The answer is none. Okla. Const. art. 5, Â§ 3 provides that any measure referred to the people shall not take effect until approved by a majority. HB 1023xx was not made contingent on HB 1010xx's effectiveness, however, but rather on its enactment. A bill is enacted (and becomes an enactment) when it is passed by the Legislature and all of the formalities required to make it a law have been performed. Norris v. Cross, 1909 OK 316, Â¶23, 105 P. 1000. As this Court implied in Norris, the process of enactment is completed prior to any referendum on the subject enactment. See 1909 OK 316 at Â¶Â¶20-25. HB 1010xx has been enacted. The contingency requirement of HB 1023xx has been met, and it will become effective on its specified date.

Â¶6 This Court set a briefing schedule and invited the Attorney General to file a brief on the issues raised. Oral argument in this matter was held before the Court en banc on June 11, 2018. On the same date, the matter was assigned to this office for disposition.

I.

STANDARD OF REVIEW

Â¶7 The right to a referendum on legislation is the second of two specific and important powers explicitly reserved to the people by the Oklahoma Constitution in Article 5, Sections 1 & 2.[4] See In re Referendum Petition No. 1, 1938 OK 131, Â¶4, 77 P.2d 1152. This Court has called the right to petition for a vote of the people by initiative and referendum "a sacred right, to be carefully preserved." In re Initiative Petition No. 348, State Question No. 640, 1991 OK 110, Â¶5, 820 P.2d 772 (quoting In re Referendum Petition No. 18, State Question No. 437, 1966 OK 152, Â¶11, 417 P.2d 295). The Court has a duty to protect this right as a function of the people of Oklahoma's right to govern themselves:

"It is the duty of the courts to construe and preserve this right as intended by the people in adopting the Constitution, and thereby reserve unto the people this power. Ours is a government which rests upon the will of the governed. The initiative and referendum is the machinery whereby self-governing people may express their opinion in concrete form upon matters of public concern. If the people are to be self-governed, it is essential that they shall have a right to vote upon questions of public interest and register the public will."

In re Referendum Petition No. 348, 1991 OK 110 at Â¶6 (quoting Ruth v. Peshek City Clerk, 1931 OK 674, Â¶25, 5 P.2d 108.

Â¶8 However, much like the right of initiative, the right of referendum is not absolute. See In re Initiative Petition No. 409, State Question No. 785, 2016 OK 51, Â¶2, 376 P.3d 250; In re Initiative Petition No. 384, State Question No. 731, 2007 OK 48, Â¶2, 164 P.3d 125. There are limits-constitutional and statutory-that guide the proper exercise of both rights. In re Initiative Petition No. 344, 1990 OK 75, Â¶14, 797 P.2d 326. See Comty. Gas and Service Co. v. Walbaum, 1965 OK 118, Â¶Â¶7-9, 404 P.2d 1014.

Â¶9 In order to assure these limits are observed and the right to Referendum is properly executed, 34 O.S. Supp. 2015 Â§ 8[5] provides that any citizen may protest the legal sufficiency of an initiative or referendum petition. McDonald v. Thompson, 2018 OK 25, Â¶5, 414 P.3d 367; In re Initiative Petition No. 409, 2016 OK 51 at Â¶2; In re Initiative Petition No. 384, 2007 OK 48 at Â¶2. Upon such a protest, this Court will review a petition to ensure that it complies with the rights and restrictions established by: the Oklahoma Constitution; legislative enactments; and this Court's own jurisprudence. McDonald, 2018 OK 25 at Â¶5; In re Initiative Petition No. 384, 2007 OK 48 at Â¶2; In re Initiative Petition No. 379, State Question No. 726, 2006 OK 89, Â¶16, 155 P.3d 32.

II. 

THE LEGAL REQUIREMENTS OF THE REFERENDUM PETITION
PROCESS

Â¶10 The basic requirements for a referendum petition are set out in the text of the Oklahoma Constitution itself. Okla. Const. art 5, Â§ 1 notes that the people "reserve power at their own option to approve or reject at the polls any act of the Legislature." Okla. Const. art 5, Â§ 2 provides restrictions on how this power is to be exercised: "The second power is the referendum, and it may be ordered (except as to laws necessary for the immediate preservation of the public peace, health, or safety), either by petition signed by five per centum of the legal voters or by the Legislature as other bills are enacted." Finally, Okla. Const. art. 5, Â§ 3 expands on the procedural requirements and provides in pertinent part:

Referendum petitions shall be filed with the Secretary of State not more than ninety (90) days after the final adjournment of the session of the Legislature which passed the bill on which the referendum is demanded. The veto power of the Governor shall not extend to measures voted on by the people. All elections on measures referred to the people of the state shall be had at the next election held throughout the state, except when the Legislature or the Governor shall order a special election for the express purpose of making such reference. Any measure referred to the people by the initiative or referendum shall take effect and be in force when it shall have been approved by a majority of the votes cast thereon and not otherwise.

...

Petitions and orders for the initiative and for the referendum shall be filed with the Secretary of State and addressed to the Governor of the state, who shall submit the same to the people. The Legislature shall make suitable provisions for carrying into effect the provisions of this article.

Â¶11 Other requirements of the referendum petition process are statutory in nature. In addition to providing for protests, 34 O.S. Supp. 2015 Â§ 8 contains the procedural framework guiding how referendum petitions are filed, publicized, signed, and submitted. Of particular note is 34 O.S. Supp. 2015 Â§ 8(F), which sets the deadline for signature gathering and provides: "Signature-gathering Deadline for Referendum Petitions. All signed signatures supporting a referendum petition shall be filed with the Secretary of State not later than ninety (90) days after the adjournment of the legislative session in which the measure, which is the subject of the referendum petition, was enacted."[6]

Â¶12 Two statutory requirements for referendum petitions are particularly salient to this protest. Title 34 O.S. Supp. 2015 Â§ 1 provides the form referendum petitions must follow and further requires "an exact copy of the text of the measure" be attached to the referendum petition. Title 34 O.S. 2011 Â§ 3 requires that "[a] simple statement of the gist of the proposition shall be printed on the top margin of each signature sheet" for a referendum petition, just as it requires for initiative petitions. Protestants assert that failure to meet these two statutory requirements, specifically, result in a petition that is legally insufficient for submission to the people of Oklahoma. This Court will address the two requirements in turn.

III. 

THE GIST OF REFERENDUM PETITION NO. 25 IS LEGALLY
INSUFFICIENT

Â¶13 Before delving into Protestants' arguments as to why the gist of the petition is legally insufficient, it is beneficial to first discuss this Court's jurisprudence concerning what a proper gist requires and the purpose the gist is meant to serve.[7] This Court has previously explained the requirements for the gist on several occasions. Recently, the Court considered a protest to the gist of an initiative petition where we noted:

"[T]he statement on the petition [the gist] and the ballot title must be brief, descriptive of the effect of the proposition, not deceiving but informative and revealing of the design and purpose of the petition. The limitations ... are necessary to prevent deception in the initiative process.... The voters, after reading the statement on the petition and the ballot title, should be able to cast an informed vote."

McDonald v. Thompson, 2018 OK 25, Â¶6, 414 P.3d 367 (quoting In re Initiative Petition No. 344, State Question No. 630, 1990 OK 75, Â¶14, 797 P.2d 326).

We have also explained:

This Court has long held that the purpose of the gist, along with the ballot title, is to "prevent fraud, deceit, or corruption in the initiative process." The gist "'should be sufficient that the signatories are at least put on notice of the changes being made,'" and the gist must explain the proposal's effect. The explanation of the effect on existing law "does not extend to describing policy arguments for or against the proposal." The gist "need only convey the practical, not the theoretical, effect of the proposed legislation," and it is "'not required to contain every regulatory detail so long as its outline is not incorrect.'" "We will approve the text of a challenged gist if it is 'free from the taint of misleading terms or deceitful language.'"

In re Initiative Petition No. 409, State Question No. 785, 2016 OK 51, Â¶3, 376 P.3d 250 (footnotes omitted) (quoting primarily In re Initiative Petition No. 384, State Question No. 731, 2007 OK 48, 164 P.3d 125).

Â¶14 Further, in In re Petition No. 409, this Court discussed how changes to Title 34 made in 2015 granted enhanced significance to the gist, because the ballot title is no longer printed on the petition. We concluded "the gist is now the only shorthand explanation of the proposal's effect. The gist alone must now work to prevent fraud, corruption, and deceit in the initiative process." In re Petition No. 409, 2016 OK 51 at Â¶4.

Â¶15 The gist of Referendum Petition No. 25 is printed at the top of its signature page, and reads as follows:

The Proposition is to repeal House Bill 1010XX which raised the gasoline taxes from 16 cents to 19 cents per gallon; raised the diesel fuel tax from 13 cents to 19 cents per gallon; raised the cigarette tax rate fifty (50) mills per cigarette; and raised the tax on the gross production of oil, gas, or oil and gas in the first 36 months of a well's production from 2% to 5%. This measure would restore those taxes to their original rates before House Bill1010XX [sic] increased them when it was passed.

Referendum Petition No. 25, Protestants' App., Tab 1.

Protestants assert there are three flaws in the gist that in combination make it legally insufficient to inform potential signatories and voters of the effect of the petition. According to Protestants the gist is legally insufficient because: 1) it fails to inform voters of the little cigar tax; 2) it fails to inform voters of the hotel/motel tax; and 3) it is written in such a manner to suggest that approval of the measure would repeal HB 1010xx, when the opposite is true.

A. The gist fails to inform signatories of the measure's effect on the little cigar tax

Â¶16 HB 1010xx primarily serves to increase revenue through the use of five different tax mechanisms. The gist printed on the signature pages mentions only three of those five mechanisms: 1) the gasoline and diesel fuel taxes; 2) the cigarette tax; and 3) the gross production tax. Proponents do not deny that the gist makes no mention of the change to the tax framework for little cigars.

Â¶17 Proponents assert the failure to mention the tax changes to little cigars is not a fatal flaw in the gist, because a gist is "not required to contain every regulatory detail so long as its outline is not incorrect." In re Initiative Petition No. 409, 2016 OK 51 at Â¶3. It is enough, according to Proponents, for the gist to inform potential signatories of all the major changes proposed, even if the gist omits a substantive detail. See McDonald v. Thompson, 2018 OK 25 at Â¶Â¶9. Proponents assert the little cigar tax will account for less than $1 million of the increased revenue resulting from HB 1010XX; increased revenue estimated to be an additional $474,696,000. Fiscal Impact Statement for HB 1010xx, Protestants' App., Tab 9.

Â¶18 Protestants, on the other hand, assert that the "little cigar" tax is not a mere regulatory detail, being one of the only five tax increases that are the primary purpose of HB 1010xx. Protestants also assert that the comparatively small amount of revenue generated by the little cigar tax does not somehow make it insignificant or immaterial enough to justify its exclusion from the gist, especially given that one of the primary purposes of the gist is specifically to put signatories on notice of the changes being made to the law. In re Initiative Petition No. 342, State Question No. 628, 1990 OK 76, Â¶14, 797 P.2d 331.

Â¶19 The failure to include any mention of the little cigar tax in the gist is troublesome. Proponents rely on this Court's decision in McDonald for the proposition that not all substantive details must be included in the gist. See 2018 OK 25 at Â¶12. However, Proponents' reliance on that case in this instance is misplaced, as the situation is distinguishable. In McDonald, this Court found the gist of an initiative petition to be sufficient despite allegations of omissions. McDonald concerned Initiative Petition No. 416, which would have created a new article in the Oklahoma Constitution to increase the gross production tax and provide a pay increase for certified personnel, including teachers. 2018 OK 25 at Â¶2. This Court rejected an argument that the gist of Initiative Petition No. 416 was misleading because it mentioned only teachers specifically as the recipients of the pay raise put in place by the proposed article, and did not discuss the other certified personnel individually. McDonald, 2018 OK 25 at Â¶9. The Court determined:

[N]either the gist, nor the petition itself mentions only teachers. In fact the gist properly mirrors the petition by stating that the new article "increases compensation for all certified personnel, including teachers." The gist further notes, in keeping with the petition, that superintendents and assistant superintendents are excluded. This language is not deceiving or misleading, but informative of the purpose behind IP 416 itself and properly describes the effect the new article will have. This situation, where the gist highlights one part of a larger category in the same manner the petition itself does, is factually distinguishable from In re Initiative Petition No. 344, where this court determined a gist to be insufficient because it did not address all the major changes proposed by the petition. See 1990 OK 75 at Â¶Â¶12-15. Protestants' reliance on that case is misplaced.

McDonald, 2018 OK 25 at Â¶9 (emphasis added).

Â¶20 Central to the above determination was not the fact that the gist emphasized one part of a larger category, but the fact that it accurately mirrored the petition in describing the changes to the law. The language "all certified personnel, including teachers" did not leave out leave out the fact that the effect of Initiative Petition No. 416 would be to increase compensation for all certified personnel.

Â¶21 In contrast, Referendum Petition No. 25, by quoting the title of HB 1010xx, clearly notes all of the tax increases put into place by HB 1010xx including the little cigar tax. The relevant language in the petition itself, taken from the title of HB 1010xx, notes the bill is: "amending 68 O.S. 2011, Sections 402, 402-1 and 402-3, which relate to tax levies on tobacco products; providing that little cigars be taxed in the same rate and manner as cigarettes...." The gist, however, fails to make any mention of the little cigar tax whatsoever. The gist and the petition itself do not match when it comes to describing one of the five new revenue sources put into place by HB 1010xx. The gist does not take the approach this Court found acceptable in McDonald of emphasizing cigarette taxes as part of a larger category of tobacco taxes impacted by a potential yes or no vote.

Â¶22 Similarly, Proponents cite McDonald to argue that exclusion of a substantive detail is not fatal to the gist. See 2018 OK 25 at Â¶9. In that instance, this Court considered arguments that failure to include all details about the gross production tax increase in the gist was fatal to Initiative Petition No. 416. Specifically, while the gist generally explained the tax, the protestants in McDonald argued the failure to include in the gist that the tax would be applied retroactively to all wells drilled after July 1 of 2015 was a fatal flaw. However, we determined that other information in the gist, including that the tax would apply to "wells during the first thirty-six months of production" was sufficient for the gist to accurately summarize the petition's effect on the law. McDonald, 2018 OK 25 at Â¶12.

Â¶23 Once more, the situation we are confronted with in this cause is distinguishable. The gist at issue in McDonald did not include every regulatory detail about how a new proposed tax would operate. That is true of the gist in this cause, which makes no attempt to explain how the taxes imposed by HB 1010xx are actually levied, collected, and dispersed. The failure to include those details is not at issue here and not what causes this Court grave concern. What is troublesome is the failure to make any mention one of the five revenue sources at all. Potential signatories may be aware that by signing the petition and then rejecting HB 1010xx at the polls, they would be removing some tax increases. But without even a brief mention in the gist of all of the taxes they will be rejecting, they are fundamentally unable to cast an informed vote, because they are not being put on notice of the changes being made and will not be aware of the entire practical effect of the petition. See McDonald, 2018 OK 25 at Â¶6; In re Initiative Petition No. 409, 2016 OK 51 at Â¶3; In re Initiative Petition No. 344, 1990 OK 75 at Â¶14.

Â¶24 Fundamentally, the need for voters to be given enough information to make an informed decision is why this Court has historically taken a dim view of excluding important changes made to the law from the gist of a petition. While distinguishable from McDonald, this cause bears similarities to others where this Court has declared the gist of a petition insufficient for failure to fully describe changes being made to the law in a manner sufficient to alert potential signatories of those changes and provide potential signatories with enough information to make an informed decision.

Â¶25 For example, in In re Initiative Petition No. 409, this Court declared the gist of a petition to be insufficient for entirely failing to include certain changes made to the law. We explained:

The petition makes significant changes to the liquor laws of this state; however, certain changes are recognizably absent from the gist. Pursuant to the petition, no Retail Package Store license or Retail Grocery Wine Store license can be issued to any grocery store, warehouse club, or supercenter located within 2,500 feet of an existing Retail Package Store or Retail Grocery Wine Store, making many grocery stores ineligible for a Retail Grocery Wine Store license. Only one Retail Grocery Wine Store license will be issued by ABLE to entities with multiple stores, again limiting a grocery store's eligibility for a Retail Grocery Wine Store license. Finally, only Retail Package Store licenses that have been in existence for more than two years from the date the ABLE Commission issues the first Retail Grocery Wine Store license shall be eligible for purchase for the purpose of converting to a Retail Grocery Wine Store license, again restricting the number of grocery store wine retailers.

The gist fails to alert potential signatories of the changes being made to the law and does not provide a potential signatory with sufficient information to make an informed decision about the true nature of the proposed constitutional amendment. See In re Initiative Petition No. 384, 2007 OK 48, Â¶Â¶ 11--12, 164 P.3d at 129--30. We hold that the gist of the petition does not fairly describe the proposed constitutional amendment and is invalid. The gist is not subject to amendment by this Court, and as a result, the only remedy is to strike the petition from the ballot

In re Initiative Petition No. 409, 2016 OK 51, Â¶Â¶6-7.

Further examples include: In re Initiative Petition 384, 2007 OK 48 (holding the gist in an education-related petition insufficient for not discussing certain important changes made by the petition) and In re Initiative Petition No. 342, 1990 OK 76 ("The statement on the Petition, as well as the ballot title, reflect only a few of the changes. The statement on the Petition does not contain the gist of the proposition....").

Â¶26 Failure to include mention of the little cigar text in the gist of Referendum Petition No. 25 would on its own be fatal to the sufficiency of the gist. However, when combined with other flaws, there can be no question that the gist is misleading and confusing to potential signatories.

B. The gist fails to inform potential signatories of the issues surrounding the hotel / motel tax

Â¶27 Protestants in this matter also assert that omitting any mention of the hotel / motel tax from the gist is fatal to its sufficiency. The hotel / motel tax would raise roughly $50 million annually, and is a far more robust revenue generator than the little cigar tax Proponents dubbed a minor regulatory detail. Based on our analysis of the little cigar tax, supra, exclusion of another of the five major revenue generating portions of HB 1010xx would also be fatal to the gist of Referendum Petition No 25. However, there are additional issues surrounding the hotel / motel tax provisions of HB 1010xx that differentiate it from the little cigar tax and that require additional consideration.

Â¶28 On April 10, 2018, the Governor signed HB 1012. Signed into law after HB 1010xx, HB 1012 repealed Sections 9-15 of HB 1010xx, effective immediately. Sections 9-15 of HB 1010xx contain the hotel / motel tax provisions of the bill. Because of this repeal, Proponents assert exclusion of the hotel / motel tax from the gist of the petition is proper. Specifically, Proponents assert:

The Oklahoma Legislature repealed the hotel/motel tax, and it is no longer even a part of the tax raises in HB 1010xx (Pet. App. Tab 7). The omission of this tax from the gist and the ballot title is therefore not misleading, but accurate, because the hotel/motel tax will never take effect. It would be misleading to include the hotel/motel tax in the gist.

Proponents' Response in Opposition, p.7

Â¶29 However, Referendum Petition No. 25 itself specifically includes mention of the hotel / motel tax, because it includes the title of HB 1010xx which describes: "enacting the Oklahoma Occupancy Tax Act; stating purpose of tax; defining terms; providing for rate of tax; imposing duty for remittance of tax and prescribing procedures related thereto...." The petition asks voters "[s]hall the following bill of the legislature be approved?" The attached bill, HB 1010xx, includes Sections 9-15, the hotel / motel tax provisions.

Â¶30 Title 34 O.S. Supp. 2015 Â§ 1 provides the form a petition for referendum must substantially follow, and beyond providing for inclusion of the title of the bill to be subjected to referendum, makes no provisions for including explanations to ease voter confusion under circumstances such as these. It is true that the question of what effect a yes vote on the referendum might have on the hotel / motel tax is a hypothetical one. However, the issue creates uncertainty that the form of the petition itself cannot alleviate. It would be very easy for a potential signatory and voter to closely examine the petition and conclude that a yes vote in a referendum on HB 1010xx would result in the entirety of the bill becoming law, including the hotel / motel tax provisions.[8]

Â¶31 This confusion could easily have been avoided had Proponents drafted a referendum petition that excluded Sections 9-15 of HB 1010xx, since they argue it has been repealed and this referendum petition would have no effect on it either way. Oklahoma law expressly permits a referendum on only part or parts of an act of the Oklahoma Legislature. Okla. Const. art. 5, Â§ 4 provides:

Â§ 4. Referendum against part of act.

The referendum may be demanded by the people against one or more items, sections, or parts of any act of the Legislature in the same manner in which such power may be exercised against a complete act. The filing of a referendum petition against one or more items, sections, or parts of an act shall not delay the remainder of such act from becoming operative.

Title 34 O.S. Supp. 2015 Â§ 1 itself provides instructions on how to delineate only a portion of an act if the petition is against less than the whole act. Any confusion as to the effect of the referendum on the hotel / motel tax provisions could have been avoided by excluding Sections 9-15 of HB 1010xx from Referendum Petition No. 25 itself. Proponents did not do this.

Â¶32 Because of the limitations on the form of the referendum petition and Proponents' decision to target all of HB 1010xx, the only vehicle available at the signature-gathering stage to alleviate the confusion concerning the inclusion of the hotel/motel tax provisions is the gist, which exists specifically to be "descriptive of the effect of the proposition, not deceiving but informative and revealing of the design and purpose of the petition." In re Initiative Petition No. 344, 1990 OK 75 at Â¶14.

Â¶33 Protestants could have included in the gist a description of why the intervening repeal of the hotel / motel tax provisions by the Legislature would mean the referendum petition would have no effect on those provisions despite their inclusion in the petition and attached bill. Such an explanation would at least have put voters on notice of what Protestants believed the practical effect of the petition to be upon those tax provisions. Instead the gist's absolute silence does the opposite of helping voters make an informed choice and accurately describe the effect of the petition. It fosters confusion caused by the petition itself, by simply ignoring it.

Â¶34 This Court is cognizant of the fact that the gist is not meant to contain every regulatory detail. In re Initiative Petition No. 409, 2016 OK 51 at Â¶3. Nor is the gist required to be incredibly lengthy or mirror word for word the petition itself. However, the gist of this petition is only roughly 90 words. The ballot title, which is also important for notifying voters of the effect of a petition, may be up to 200 words. 34 O.S. Supp. 2015 Â§ 9. It is impossible to justify under these circumstances the omission of the practical effect the petition will have upon two of the five taxes originally included in HB 1010xx.[9]

C. The gist of the petition incorrectly characterizes the proposition to be put before the people 

Â¶35 Finally, Protestants assert the gist is fundamentally misleading because is incorrectly suggests that a yes vote would repeal HB 1010xx. We agree. Okla. Const. art. 5, Â§ 3 provides in pertinent part: "Any measure referred to the people by the initiative or referendum shall take effect and be in force when it shall have been approved by a majority of the votes cast thereon and not otherwise."

Â¶36 In In re State Question No. 216, Referendum Petition No. 71, 1937 OK 309, 68 P.2d 424, this Court applied Okla. Const. art. 5, Â§ 3 and specifically addressed the question of whether the ballot title of a referendum petition should be phrased in the affirmative or the negative. In that cause, the ballot title submitted by proponents of a referendum petition read, in reference to the act in question, "[s]hall it be repealed?" The ballot title submitted by the Attorney General read "[s]hall it be adopted?" In re State Question No. 216, 1937 OK 309 at Â¶Â¶6-7. In resolving the issue of how the question should be phrased on the ballot title, this Court looked to the text of Okla. Const. art. 5, Â§ 3 itself and determined:

Irrespective of the title, the real question is, "Shall the act be approved?" If it is not approved by a majority vote, it stands inoperative.

Under the Constitution and law the filing of the petition signed by the requisite number of legal voters within the time provided by law operates to stop or suspend the operative effect of an act passed by the Legislature and referred by it to the people. Such an act when duly referred never becomes operative until approved by a majority of the voters.

The proper question to place on the ballots is: "Shall it be approved?" Since there is a controversy in the matter, we deem it best to follow the plain wording of the Constitution and state the question in accordance therewith.

In re State Question No. 216, 1937 OK 309 at Â¶10-12.

Â¶37 Title 34 O.S. Supp. 2015 Â§ 1, which provides the form for referendum petitions, requires the question be phrased similarly in the referendum petition itself, and provides in pertinent part: "The question we herewith submit to our fellow voters is: Shall the following bill of the legislature (or ordinance or resolution--local legislation) be approved?" It is not disputed that the petition itself follows the requirements of Okla. Const. art. 5, Â§ 3 and 34 O.S. Supp. 2015 Â§ 1. The petition reads: "The question we herewith submit to our fellow voters is: Shall the following bill of the legislature be approved?"

Â¶38 The gist of Referendum Petition No. 25, however, is worded differently from the petition itself. The relevant language, in pertinent part, states:

The Proposition is to repeal House Bill 1010XX .... This measure would restore those taxes to their original rates before House Bill1010XX [sic] increased them when it was passed.

Protestants assert this language is backwards, insofar as it indicates a "yes" vote would constitute a rejection of HB 1010XX and its changes to tax law. Protestants are fundamentally correct in their assertion, and the gist of the petition is not in keeping with the language of the petition itself, or the requirements of Okla. Const. art. 5, Â§ 3 this Court initially applied to referendum petition ballot titles in In re State Question No. 216, 1937 OK 309.

Â¶39 Proponents of the petition assert the gist is not misleading. They focus on their interpretation of the word "proposition" and assert that the underlying proposition of every referendum is to repeal the bill in question. Proponents argue:

Petitioners/Protestants' argument hinges on the belief that the "proposition" of every referendum is that the bill should be approved. This is the exact opposite of the proposition of every referendum. The proponents of a referendum are obviously opposed to the bill at issue.

Consistent with the purpose of a referendum, the proposition of RP 25 is that HB 1010xx should be repealed. (Pet. App. Tab 1). Therefore, it is fully appropriate to phrase the gist and ballot title in such a manner that a "Yes" vote is a vote in favor of the referendum to repeal, while a "No" vote is a vote against the referendum to repeal. The Proponents' suggested ballot title makes this perfectly clear. (Pet. App. Tab 2). The voters will be answering the question as phrased on the ballot title, not the referendum petition.

Proponents' Response in Opposition, p. 9.

Proponents' argument is not in accord with this Court's determination in In re State Question No. 216, 1937 OK 309, with the text of Okla. Const. art. 5, Â§ 3 itself, or with 34 O.S. Supp. 2015 Â§ 1's requirement that the question on the petition be phrased as shall a bill of the legislature "be approved."

Â¶40 Regardless of the intent of those proposing a referendum petition, the underlying proposition is to subject an act of the legislature to a referendum where a "Yes" vote means approval and a "No" vote means the bill shall never "take effect and be in force." Okla. Const. art. 5, Â§ 3; In re State Question No. 216, 1937 OK 309 at Â¶11. While the petition itself properly reflects this question, the gist does not and is poorly worded to such an extent that it implies a yes vote on the referendum will accomplish the opposite of what the petition itself states. In that regard, the gist's outline is incorrect, it is fundamentally misleading to potential signatories, and is insufficient. See In re Initiative Petition No. 409, 2016 OK 51 at Â¶3; In re Initiative Petition No. 384, 2007 OK 48 at Â¶9; In re Initiative Petition No. 363, State Question No. 672, 1996 OK 122, Â¶20, 927 P.2d 558.

IV. 

REFERENDUM PETITION NO. 25 IS LEGALLY INSUFFICIENT
BECAUSE IT FAILS TO INCLUDE AN EXACT COPY OF THE TEXT OF
THE MEASURE AS REQUIRED BY 34 O.S. SUPP. 2015 Â§ 1

Â¶41 Protestants also assert that the petition is legally insufficient because it fails to include an exact copy of the text of the measure, HB 1010xx. This requirement is found in 34 O.S. Supp. 2015 Â§ 1, which provides in pertinent part: "The question we herewith submit to our fellow voters is: Shall the following bill of the legislature (or ordinance or resolution--local legislation) be approved? (Insert here an exact copy of the text of the measure.)" (Emphasis added). The parties do not dispute that the copy of HB 1010xx attached to the petition is missing the bill's section numbers. It is also missing pagination, as well as the final page noting when the bill was acted upon by both houses of the Legislature, the Governor, and received by the Secretary of State.

Â¶42 Protestants urge that strict compliance with the exact copy requirement is necessary, and nothing less than an actual exact copy will suffice. Proponents, however, assert that only substantial compliance is necessary, and they have met this requirement despite the missing elements because the copy of HB 1010xx attached to the petition contains all the substantive language of the bill. Proponents assert the issues with the copy are clerical and technical errors, and do not rise to the level of a substantive problem with petition.

Â¶43 In general, substantial compliance with the statutory requirements for referendum petitions is sufficient. Title 34 O.S. Supp. 2015 Â§ 1 opens with "[t]he referendum petition shall be substantially as follows...." Title 34 O.S. 2011 Â§ 24 is even more expansive and provides that "[t]he procedure herein prescribed is not mandatory, but if substantially followed will be sufficient. If the end aimed at can be attained and procedure shall be sustained, clerical and mere technical errors shall be disregarded."

Â¶44 The language of 34 O.S. 2011 Â§ 24 has been part of the statutory requirements for initiative and referendum petitions since the early twentieth century, and was examined and applied by this Court in Norris v. Cross, 1909 OK 316, 105 P. 1000. In that cause, the Court considered whether the duties assigned to the Secretary of State with regard to petitions were mandatory, and explained:

The act contains no expressions specifically declaring the provision under consideration, or any other provision of said act of April, 1908, shall be mandatory. On the other hand, by section 21 of the act (Sess. Laws, 1907--1908, p. 452, c. 44) it is said: "The proceeding herein described is not mandatory, but if substantially followed, will be sufficient. If the end aimed at can be attained and procedure shall be sustained, clerical and mere technical errors shall be disregarded." If the provision of the statute now under consideration is mandatory, it must be so by implication. To determine from the statute whether it is mandatory, it is necessary that we look to the subject--matter of the statute, consider the importance of the provision to be applied, and the relation of that provision to the general object intended to be secured by the act. The general purpose of the act is to provide a procedure for the exercise of the powers of the initiative and referendum, and to make effective the provisions of the Constitution relative to such powers. In so far as the act re--enacts constitutional provisions it is mandatory. By the mere re--enactment of a constitutional provision into a statute its character or force cannot be changed. But the provision of the statute which the Secretary has not obeyed does not exist as a part of the Constitution.

Norris, 1909 OK 316 at Â¶Â¶11-12.

Â¶45 After Norris, this Court continued to refine and apply its jurisprudence concerning substantial compliance with the statutory requirements for initiative and referendum petitions. See In re Initiative Petition No. 2 of Cushing, 1932 OK 124, 10 P.2d 271 (holding the procedure is not mandatory, but, if substantially followed, will be sufficient); In re Initiative Petition No. 176, State Question No. 253, 1940 OK 214, 102 P.2d 609 (finding only technical defects and declaring substantial compliance sufficient).[10]

Â¶46 In 1960, this Court decided In re Referendum Petition No. 130, State Question No. 395, and determined there was no requirement in Title 34 that a referendum petition contain the full text of the bill being referred to the voters and that the title of the act was sufficient to reveal the full intention of the legislative enactment to signatories. 1960 OK 185, Â¶Â¶7-11, 354 P.2d 400. The Court explained:

Finally protestant argued that the petition in order to be valid must contain and include the text of Senate Bill No. 153. In support of this contention protestant cites Townsend v. McDonald, 184 Ark. 273, 42 S.W.2d 410; Westbrook v. McDonald, 184 Ark. 740, 43 S.W.2d 356, 44 S.W.2d 331, and Shepard v. McDonald, 188 Ark. 124, 64 S.W.2d 559. These cases construe the provisions of the Arkansas statute (Acts 1911, Ex.Sess., p. 582) which requires a full and correct copy of the measure to be attached to the petition. There is no such requirement either in our constitution or the laws enacted in pursuance thereof as to a referendum petition despite the argument of protestant that 34 O.S. 1951 Â§ 4 [34-4] does make this requirement.

...

We are of the opinion that a substantial compliance with the legislative requirement is sufficient.

...

The title of the Act reveals the full intention of the legislative enactment.

In re Referendum Petition No. 130, 1960 OK 185 at Â¶Â¶7-11.

Â¶47 At the time In re Referendum Petition No. 130 was decided, the exact copy language currently at issue was not part of 34 O.S. Â§ 1. The Court in that case was interpreting 34 O.S. 1951 Â§ 1, which read in pertinent part: "The question we herewith submit to our fellow voters is: Shall the following bill of the Legislature be vetoed...." Less than a year after In re Referendum Petition No. 130 was decided, the Legislature amended 34 O.S. Â§ 1. See Laws 1961, SB 64, p. 263, Â§ 1, emerg. eff. May 17, 1961. It is at that point the exact copy language was added. 34 O.S. 1961 Â§ 1 reflected the change and provided in pertinent part: "The question we herewith submit to our fellow voters is: Shall the following bill of the legislature (or ordinance or resolution-local legislation) be approved? (Insert here an exact copy of the title and text of the measure.)".[11]

Â¶48 In Polymer Fabricating, Inc. v. Employers Workers' Comp. Ass'n, 1998 OK 113, 980 P.2d 109, this Court set out how it determines legislative intent when a statue is amended. We explained:

By amending a statute the legislature may have intended (a) to change existing law or (b) to clarify ambiguous law. Its precise intent is ascertained by looking to the circumstances that surround the change. If the earlier statute definitely expressed an intent or had been judicially interpreted, the Legislature's amendment is presumed to have changed an existing law, but if the meaning of the earlier statute was in doubt, or where uncertainty as to the law's meaning did exist, a presumption arises that the amendment was designed to more clearly express the legislative intent that was left indefinite by the earlier text.

Polymer Fabricating, Inc., 1998 OK 113 at n.18. See Dean v. Multiple Injury Trust Fund, 2006 OK 78, Â¶16, 145 P.3d 1097; Magnolia Pipeline Co. v. Okla. Tax Com'n, 1946 OK 113, Â¶11, 167 P.2d 884.

Â¶49 This Court has also explained that if there is a conflict between two statutes on the same subject and the language in one statute is general while the language in the other is specific, the specific statute will control over the general statute. Glasco v. State ex rel. Okla. Dept. of Corrections, 2008 OK 65, Â¶17, 188 P.3d 177; Phillips v. Hedges, 2005 OK 77, Â¶12, 124 P.3d 227. Further, the general rule of statutory construction is that later-enacted legislation controls over the earlier-enacted provisions, and in the case of an irreconcilable conflict in statutory language, the later enacted statute modifies the earlier statute. See 75 O.S. 2011 Â§ 22; City of Sand Springs v. Dep't of Pub. Welfare, 1980 OK 36, Â¶Â¶27-28, 608 P.2d 1139.

Â¶50 Applying the above jurisprudence, it is evident that the 1961 amendment to 34 O.S. Â§ 1, coming as it did right after a decision of this Court determining that substantial compliance was sufficient and an exact copy of the text of the measure was not required, represents legislative intent to change existing law. Further, this newer and very specific addition trumps the more general substantial compliance requirements; concerning the form of the petition in 34 O.S. Supp. 2015 Â§ 1, and expressed generally in 34 O.S. 2011 Â§ 24.

Â¶51 The Court of Civil Appeals correctly reached this same conclusion in In re: Referendum Petitions No. 0405-1, 0405-2 and 0405-3, 2007 OK CIV APP 19, 155 P.3d 841 (cert. denied Nov. 20, 2006). The Court of Civil Appeals held:

We will presume the Legislature was aware of the Supreme Court's holding in Referendum Petition No. 130 when it amended Â§ 1. Oglesby v. Liberty Mut. Ins. Co., 1992 OK 61, 832 P.2d 834. We further presume the Legislature intended what it expressed in the amendment requiring an exact copy of the measure to be inserted. Id., at p. 832. "Except when a contrary intention plainly appears, the words used are given their ordinary and common definition." Id. For the foregoing reasons, we hold the Legislature intended it to be mandatory that an exact copy of the title and text of the measure was to be inserted in the petition and that substantial compliance with this portion of Â§ 1 was no longer legally sufficient.

In that cause, the Court of Civil Appeals determined the petitions at issue to be legally insufficient because they failed to include substantive portions of the relevant ordinances. In re: Referendum Petitions No. 0405-1, 0405-2 and 0405-3, 2007 OK CIV APP 19at Â¶18.

Â¶52 The copy of HB 1010xx is obviously not an exact copy of the signed bill filed with the secretary of state.[12] Proponents assert, however, that even if strict compliance is required and an exact copy of the text of the measure is necessary, exclusion of the section numbers is not fatal to the sufficiency of the petition because they are not themselves part of the text of the measure. Proponents would distinguish this cause from In re: Referendum Petitions No. 0405-1, 0405-2 and 0405-3, where substantive provisions of the text were excluded from the copy. Perhaps this argument may be true of the bill's page numbers and signature page, but it cannot be said of the section numbers.

Â¶53 A bill's section numbers are part of the text published in the Oklahoma Session Laws. The section numbers of a bill are also used for navigation of the bill, and more importantly, internal cross referencing and the titling of Acts. For example, Section 9 of HB 1010xx provides:

SECTION 9. NEW LAW A new section of law to be codified in the Oklahoma Statutes as Section 5501 of Title 68, unless there is created a duplication in numbering, reads as follows:

Section 9 through 15 of this act shall be known and may be cited as the "Oklahoma Occupancy Tax Act".

HB 1010xx, Protestant's App., Tab 5.

Proponents have pointed out, of course, that Sections 9 through 15 of HB 1010xx were repealed by HB 1012. In order to accomplish that repeal, the Legislature delineated the parts of HB 1010xx it wished to repeal by their section numbers:

SECTION 1. REPEALER Sections 9, 10, 11, 12, 13, 14 and 15 of Enrolled House Bill No. 1010 of the 2nd Extraordinary Session of the 56th Oklahoma Legislature, are hereby repealed.

HB 1012, Protestants' App., Tab 7.

Â¶54 Without the section numbers present, potential signatories have no easy method of locating the portion of HB 1010xx that has already been repealed by the Legislature, even if the gist had been correctly drafted to make them aware of the issue in the first place. Without the section numbers present, any internal navigation of the bill at issue becomes excessively cumbersome. For the above reasons, the section numbers are part of the exact copy of the text of the measure that must be attached pursuant to 34 O.S. Supp. 2015 Â§ 1 to achieve the strict compliance mandated by legislative amendment. The absence of the section numbers from the attached copy of HB 1010xx is fatal to the legal sufficiency of the petition.

CONCLUSION

Â¶55 In reaching today's decision, we are mindful of the sacred right of referendum and the duty to preserve and protect that right vested in this Court. In re Referendum Petition No. 348, State Question No. 640, 1991 OK 110, Â¶5, 820 P.2d 772; In re Referendum Petition No. 18, State Question No. 437, 1966 OK 152, Â¶11, 417 P.2d 295. The statutory requirements and limitations placed upon referendums and applied today, are not present to impair the right of the people to govern themselves, but to guard against fraud, corruption or deception in the initiative and referendum process. See In re Referendum Petition No. 348, 1991 OK 110 at Â¶6; In re Initiative Petition No. 344, State Question No. 630, 1990 OK 75, Â¶14, 797 P.2d 326. They are there for the protection of Oklahoma voters, to ensure that when they are presented with referendum and initiative petitions they are provided with enough information to make an informed choice.

Â¶56 The gist of Referendum Petition No. 25 is misleading for multiple reasons, any of which would suffice alone to declare it insufficient. Combined, these flaws leave no doubt that signatories are not being put on notice of the changes being made. See McDonald v. Thompson, 2018 OK 25, Â¶6, 414 P.3d 367; In re Initiative Petition No. 409, State Question No. 785, 2016 OK 51, Â¶3, 376 P.3d 250; In re Initiative Petition No. 344, State Question No. 630, 1990 OK 75, Â¶14, 797 P.2d 326. Further, the failure to include an exact copy of the text of the measure to be referred violates a strict statutory mandate that exists to ensure signatories and voters are put on notice of exactly what law is potentially going to be submitted for their approval.

Â¶57 The gist of referendum and initiative petitions is not subject to amendment by this Court, and as a result, the only remedy is to strike the petition. In re Initiative Petition No. 409, State Question No. 785, 2016 OK 51, Â¶7, 376 P.3d 250. See In re Initiative Petition No. 384, State Question No. 731, 2007 OK 48, 164 P.3d 125 (declaring gist insufficient and striking petition from the ballot). Similarly, the Oklahoma Constitution and statutes provide no authority for this Court or Proponents to amend the petition itself. The petition is legally insufficient and must be stricken.

Â¶58 However, as the Second Extraordinary Session of the Fifty-sixth Legislature concluded on April 19, 2018, the ninety-day window for filing referendum petitions against HB 1010xx and obtaining signatures has not yet expired and will not expire until July 18, 2018. Okla. Const. art. 5, Â§ 3. Nothing prevents Proponents from filing a new referendum petition, without the deficiencies identified today, and restarting the process of referendum. See In re Initiative Petition No. 382, State Question No. 729, 2006 OK 45, Â¶18, 142 P.3d 400. As part of this process, Proponents would need to obtain new signatures as any obtained up until this point for the legally insufficient Referendum Petition No. 25 could not be applied to a new referendum petition. Any petition for rehearing in this matter shall be filed no later than 5:00pm on June 26, 2018.

REFERENDUM PETITION NO. 25, STATE QUESTION NO. 799, IS
DECLARED INVALID AND ORDERED STRICKEN FROM THE BALLOT

CONCUR: COMBS, C.J., KAUGER, EDMONDSON, REIF, JJ., and BARNES, S.J.

CONCUR IN PART; DISSENT IN PART: GURICH, V.C.J.

DISSENT: WINCHESTER, J. (by separate writing) and WYRICK, J. (by separate writing to follow)

RECUSED: COLBERT and DARBY, JJ.

FOOTNOTES

[1] This original action is the second protest to be filed against the legal sufficiency of the petition. On May 10, 2018, the Association of Professional Oklahoma Educators and its Executive Director filed their own protest: In re: Referendum Petition No. 25, State Question No. 799, No. 117,004.

[2] The hotel/motel tax provisions of HB 1010xx, found at Sections 9-15, were ostensibly repealed during the session by HB 1012 which was signed into law by the Governor on April 10, 2018.

[3] Okla. Const. art. 5, Â§ 33 provides:

Â§ 33. Revenue bills - Origination - Amendment - Limitations on passage - Effective date - Submission to voters.

A. All bills for raising revenue shall originate in the House of Representatives. The Senate may propose amendments to revenue bills.

B. No revenue bill shall be passed during the five last days of the session.

C. Any revenue bill originating in the House of Representatives shall not become effective until it has been referred to the people of the state at the next general election held throughout the state and shall become effective and be in force when it has been approved by a majority of the votes cast on the measure at such election and not otherwise, except as otherwise provided in subsection D of this section.

D. Any revenue bill originating in the House of Representatives may become law without being submitted to a vote of the people of the state if such bill receives the approval of three-fourths (3/4) of the membership of the House of Representatives and three-fourths (3/4) of the membership of the Senate and is submitted to the Governor for appropriate action. Any such revenue bill shall not be subject to the emergency measure provision authorized in Section 58 of this Article and shall not become effective and be in force until ninety days after it has been approved by the Legislature, and acted on by the Governor.

[4] Okla. Const. art. 5, Â§ 1 provides:

The Legislative authority of the State shall be vested in a Legislature, consisting of a Senate and a House of Representatives; but the people reserve to themselves the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls independent of the Legislature, and also reserve power at their own option to approve or reject at the polls any act of the Legislature.

Okla. Const. art. 5, Â§ 2 provides:

The first power reserved by the people is the initiative, and eight per centum of the legal voters shall have the right to propose any legislative measure, and fifteen per centum of the legal voters shall have the right to propose amendments to the Constitution by petition, and every such petition shall include the full text of the measure so proposed. The second power is the referendum, and it may be ordered (except as to laws necessary for the immediate preservation of the public peace, health, or safety), either by petition signed by five per centum of the legal voters or by the Legislature as other bills are enacted. The ratio and per centum of legal voters hereinbefore stated shall be based upon the total number of votes cast at the last general election for the Office of Governor.

[5] Title 34 O.S. Supp. 2015 Â§ 8 provides in pertinent part:

B. It shall be the duty of the Secretary of State to cause to be published, in at least one newspaper of general circulation in the state, a notice of such filing and the apparent sufficiency or insufficiency of the petition, and shall include notice that any citizen or citizens of the state may file a protest as to the constitutionality of the petition, by a written notice to the Supreme Court and to the proponent or proponents filing the petition. Any such protest must be filed within ten (10) business days after publication. A copy of the protest shall be filed with the Secretary of State.

[6] This ninety-day deadline after the adjournment of the legislative session is a firm deadline, and does not wait upon the resolution of any protests to a particular referendum petition. In contrast, circulation of an initiative petition for signatures does not even begin until after any protests have been resolved and the time for them has expired. See 34 O.S. Supp. 2015 Â§ 8(E).

[7] The majority of this Court's jurisprudence interpreting the gist requirement of 34 O.S. 2011 Â§ 3 concerns initiative petitions. Proponents argue there are differences between referendum petitions and initiative petitions that require this court view the gist requirements for each through different lenses. They assert that a referendum is limited in scope to the approval or rejection of a single piece of legislation, whereas an initiative petition is capable of making many changes to existing law, where there is greater potential to hide or obscure important details. This Court finds that argument unpersuasive. The statutory requirement for the gist makes no distinction between initiative petitions and referendum petitions. Proponents point to no cases where this Court has applied a different standard when determining the sufficiency of the gist of a referendum petition as opposed to an initiative petition, and we decline to do so now.

[8] The legal arguments surrounding this issue were briefed and argued in some detail before this Court, which is illustrative of the complicated nature of the question. However, we need not decide at this time what effect a yes vote on a referendum against an entire bill would have against a previously-repealed set of provisions in that bill. We are concerned at this juncture with the effect the confusion has upon voters, and whether after reading the statement on the petition they are able to cast an informed vote, and are not misled. See McDonald, 2018 OK 25 at Â¶6; In re Initiative Petition No. 344, 1990 OK 75 at Â¶14.

[9] This remains true even if, as is the case with the hotel / motel tax, Proponents believe the practical effect is that there will no effect at all.

[10] In Community Gas & Service Co. v. Walbaum, 1965 OK 118, Â¶8, 404 P.2d 1014, the Court elaborated further:

While clerical and technical defects in an initiative petition may and should be disregarded, 34 O.S. 1961 Â§ 24, a material departure from the statutory form renders an initiative petition ineffective and void. In re Initiative Petition No. 9 of Oklahoma City, 185 Okl. 165, 90 P.2d 665, 668. If a statutory provision is essential to guard against fraud, corruption or deception in the initiative and referendum process, such provision must be viewed as an indispensable requirement and failure to substantially comply therewith is fatal.

[11] The "title" portion of "exact copy of the title and text of the measure" was removed by the Legislature in 2015. See Laws 2015, HB 1484, c. 193, Â§ 1, emerg. eff. April 28, 2015.

Also of note, the 1961 amendments to 34 O.S. Â§ 1 changed the question to be submitted to voters from "shall the following ... be vetoed:" to "shall the following ... be approved?" See Laws 1961, SB 64, p. 263, Â§ 1, emerg. eff. May 17, 1961. Potentially, this was done to bring the requirements of 34 O.S. Â§ 1 in line with Okla. Const. art. 5, Â§ 3, as interpreted and applied by this Court in In re State Question No. 216, Referendum Petition No. 71, 1937 OK 309, 68 P.2d 424.

[12] Protestants' App., Tab 5. Also available at https://www.sos.ok.gov/documents/legislation/56th/2018/2S/HB/1010.pdf

The best practice for drafting referendum petitions would be to attach, with no deviation whatsoever, a copy of the signed bill in question that is on file with the Secretary of State of the State of Oklahoma. This will alleviate any potential confusion about what voters are being asked to approve. As the Court of Civil Appeals noted:

Strict compliance with the clear mandate in Â§1 that an exact copy of the measure be inserted will obviate the need for a case by case determination as to how much of a measure must be included to satisfy a subjective substantial compliance rule. All parties, including the voters, will benefit because there will be nothing left to conjecture or speculation as to the content of the measure which is the subject of the petition. Additionally, strict compliance with this requirement will remove one portion of the petition process from the need for judicial review.

In re: Referendum Petitions No. 0405-1, 0405-2 and 0405-3, 2007 OK CIV APP 19at Â¶19.

Winchester, J., dissenting:

Â¶1 I dissent. I would allow the people to exercise their constitutional right of referendum. The proponents of this referendum are proposing that the people of the State of Oklahoma be allowed to decide whether to approve or disapprove legislation passed within the last 90 days by the State Legislature. The majority of signatures will likely come from those opposing the legislation. Nevertheless, the signatures may merely say, "Let's vote on it." Tax increases are important to the citizens of this state as evidenced by the vote of the people who enacted Article 5, Â§ 33 of Oklahoma's Constitution,[1] which requires a three-fourths majority vote of both the House and the Senate to enact a revenue bill. The increase in taxes in certain areas is what this referendum addresses. While this Court's duty is to guard against fraud, corruption or deception in the referendum process, our decisions should not serve as a road block for the people to voice their objection to legislation. I agree with the majority opinion that this Court has a duty to preserve and protect "the sacred right of referendum," which is the right of the citizens of this state to challenge legislation.

Â¶2 The oral argument made clear that both sides to this controversy agree that our teachers need a raise. The challenge goes to whether or not this tax increase is to be used for those raises. There is no question the "exact text" or words from the bill are attached to the gist. However, the Court declares the petition invalid due to technicalities of not including "pagination," which is merely page numbers; paragraph numbers; writing the gist in a manner that may be confusing regarding a yes or no vote; and finally, not clarifying to the Court's satisfaction the small cigar tax and the fact that the hotel tax has subsequently been removed. I am not persuaded that any of these minor blemishes in the petition would deceive voters when the issue comes up for a vote. The gist and bill together more than adequately inform a signer of the petition.

Â¶3 Collecting signatures for a referendum petition should not be a difficult task. The number of signatures necessary is five percent of those who voted in the last election for this state's governor. The referendum is merely asking for a vote on previously approved legislation.

Â¶4 If successful in collecting the necessary signatures, then the process of drafting a ballot title occurs. 34 O.S.Supp.2017, Â§ 10.[2] Address concerns at that point and the Court can ultimately approve or disapprove the title that goes to a vote. If the proponents fail to collect the signatures, that ends the issue.

Â¶5 I would allow them to circulate their petition.

FOOTNOTES

[1] Â§ 33. Revenue bills - Origination - Amendment - Limitations on passage - Effective date - Submission to voters.
A. All bills for raising revenue shall originate in the House of Representatives. The Senate may propose amendments to revenue bills.
B. No revenue bill shall be passed during the five last days of the session.
C. Any revenue bill originating in the House of Representatives shall not become effective until it has been referred to the people of the state at the next general election held throughout the state and shall become effective and be in force when it has been approved by a majority of the votes cast on the measure at such election and not otherwise, except as otherwise provided in subsection D of this section.
D. Any revenue bill originating in the House of Representatives may become law without being submitted to a vote of the people of the state if such bill receives the approval of three-fourths (3/4) of the membership of the House of Representatives and three-fourths (3/4) of the membership of the Senate and is submitted to the Governor for appropriate action. Any such revenue bill shall not be subject to the emergency measure provision authorized in Section 58 of this Article and shall not become effective and be in force until ninety days after it has been approved by the Legislature, and acted on by the Governor.

Amended by State Question No. 640, Initiative Petition No. 348, adopted at election held March 10, 1992.

[2] A. Any person who is dissatisfied with the wording of a ballot title may, within ten (10) business days after the same is published by the Secretary of State as provided for in subsection I of Section 8 of this title, appeal to the Supreme Court by petition in which shall be offered a substitute ballot title for the one from which the appeal is taken. Upon the hearing of such appeal, the court may correct or amend the ballot title before the court, or accept the substitute suggested, or may draft a new one which will conform to the provisions of Section 9 of this title.
B. No such appeal shall be allowed as to the ballot title of constitutional and legislative enactments proposed by the Legislature.
Amended by Laws 2015, HB 1484, c. 193, Â§ 6, emerg. eff. April 28, 2015.

Wyrick, J., with whom Winchester, J., joins, dissenting:

Â¶1 At worst, this is a close case. Both the Secretary of State and the Attorney General--two perfectly reasonable people with frontline responsibility to gauge the sufficiency of referendum petitions[1]--have examined this petition and concluded that it is sufficient and can go to the people.[2] If reasonable people can disagree as to the sufficiency of a petition, then the petition isn't clearly deficient; and if it isn't clearly deficient, we should err on the side of letting the people have their say--even if we might quibble with some of the drafting choices made by the proponents.

Â¶2 Unfortunately, the Court chooses to quibble. In lawyering this petition to death, the Court finds it deficient because (1) it contains a gist that the Court deems insufficient for reasons that have no connection to the actual purposes of a gist nor to the text of any statute or constitutional provision, and (2) the copy of the measure the proponents attached omits 21 characters of text out of approximately 80,000--the entirely non-substantive, never-to-be-codified section numbers, at that. In doing so, the Court unnecessarily departs from our referendum petition precedents. I respectfully dissent.

I.

A.

Â¶3 Even assuming that we exercise valid authority when we put a gist under the judicial microscope,[3] the Court imposes a standard that will (1) require a gist that hopelessly confuses the average citizen as to what he is being asked to sign, and (2) effectively insulate revenue measures from the referendum process, in plain contravention of the Constitution's requirement that revenue measures always be subject to the will of the people.

Â¶4 This is so because the majority insists that the gist of this referendum be phrased in a way that matches the ballot question. In so doing, the Court ignores the fact that a gist and ballot question help a citizen answer two different questions, at two distinct points in time: (1) do I want this measure to be put to a vote of the people? and (2) do I want this measure to become law? Unlike an initiative petition, where the answer to each question will be the same--i.e., a voter who wants the initiative to be on the ballot will also be in favor of approving the initiative--in the referendum context, a voter who wants the question on the ballot will be a voter who does not want the measure to become law. A referendum like this one, after all, is an attempt to undo the effect of a legislative enactment. Thus, a requirement that the gist of a referendum be phrased the same as the eventual ballot question will mislead voters into signing a petition when it is against their interest to do so, and vice versa.

Â¶5 Take the gist mandated by today's decision. According to the Court, it must tell a potential signer of the petition that he is being asked to sign a petition proposing a measure to approve a variety of new taxes.[4] The working Oklahoman who has a clipboard shoved in his face on the way out of the grocery store will read the Court's proposed gist and think that--if he is in favor of these new taxes--he should sign this petition. But that voter would be 100% wrong. The taxes have already been enacted. The purpose of the referendum is to undo that status quo. Those in favor of the new taxes do not want the referendum on the ballot. They want to maintain the status quo, and thus it is in their interest not to sign. 

Â¶6 The opposite is also true. A voter opposed to the new taxes will read the Court's proposed gist and think that he should not sign the petition because he does not want to approve any new taxes. This is particularly problematic because this effectively undermines the Constitution's clear mandate that revenue bills be subject to referendum.[5] I cannot fathom how proponents of a referendum to disapprove new taxes will ever be able to collect the thousands of signatures they need when they are forced to collect those signatures with a petition that tells potential signatories that the proposal is to "approve" those new taxes, rather than to tell them more accurately that the proposal is to repeal those new taxes by popular vote.

Â¶7 The proponents' gist describes their measure as one proposing to repeal HB 1010xx's new taxes, which is the only accurate way to describe what they propose to do:

The Proposition is to repeal House Bill 1010XX which raised the gasoline taxes from 16 cents to 19 cents per gallon; raised the diesel fuel tax from 13 cents to 19 cents per gallon; raised the cigarette tax rate fifty (50) mills per cigarette; and raised the tax on the gross production of oil, gas, or oil and gas in the first 36 months of a well's production from 2% to 5%. This measure would restore those taxes to their original rates before House Bill 1010XX increased them when it was passed.[6]

Indeed, it is how anyone--save the members of the majority--would summarize this proposal.[7] That the Court nonetheless manages to deem this gist as misleading illustrates its fundamental misapprehension of the meaning and purpose of a "simple statement of the gist of the proposition" in the referendum petition context.[8]

Â¶8 The Court's misunderstanding of the role of a gist in a referendum, and subsequent insistence that a referendum's gist be phrased in a way that does not accurately describe what its proponents seek to accomplish, will do serious, long-lasting harm to the people's ability to exercise their referendum power--particularly with respect to revenue measures. This is not what the people intended when they reserved to themselves the referendum power, and it is not what the people intended when they mandated that revenue measures be subject to that referendum power.

B.

Â¶9 The majority also faults the gist for failing to mention the referendum's effect on the already-repealed hotel/motel occupancy tax. Despite the majority's refusal to say so,[9] the referendum won't affect that already-repealed portion of HB 1010xx,[10] so the proponents' decision not to mention that portion of the bill in the gist is not only reasonable, but also correct. Moreover, because the majority itself refuses to say what effect the referendum will have on that tax, I am baffled as to how we can insist that the proponents do what the Court will not.[11]

C.

Â¶10 The majority next faults the gist for noting that HB 1010xx "raised the cigarette tax rate fifty (50) mills per cigarette,"[12] without specifying that the tax on "little cigars" was raised to the same rate.[13] The proponents correctly point out that little cigars make up only a sliver of the cigarette market, so the change of the rate on little cigars creates only a tiny fraction of the revenue generated by HB 1010xx--about 0.2% to be precise[14]--and thus it is precisely the sort of minor provision that needn't be in the gist. A gist of something, after all, is only its "main point" or the "pith of the matter,"[15] and the minuscule little cigar tax is hardly the "main point" of HB1010xx.[16]

Â¶11 But even accepting the majority's premise as true, that the little cigar tax is at the heart of this referendum such that a voter needs to know about this tax when being asked to sign this referendum petition, the referendum petition does put the voter on notice of this tax. As required by law,[17] the referendum petition contains a complete version of HB 1010xx's title, which includes a statement that "little cigars be taxed in the same rate and manner as cigarettes."[18] And if a potential signer of the petition wants even more detail than that, he or she can flip to the attached copy of HB 1010xx with the full provisions relating to little cigars.[19]

Â¶12 To say, as the majority does, that because something is in the measure, it must also be in the gist--or worse yet, because something is in the title of the measure, it must also be in the gist--is to render the gist requirement meaningless.[20] If everything that was in the title had to be in the gist, what's the point of requiring inclusion of the title? And the full text of the measure? A "simple statement of the gist" must, as a matter of logic and grammar, include less than what is in the title and text of the measure. This is inherent not only in the plain meaning of the term "gist," but also in the related provisions of law requiring inclusion of the title of the measure and its full text.

II

Â¶13 The Court also invalidates this referendum because the petition includes a copy of HB 1010xx that omits 21 of the bill's approximately 80,000 characters of text. Given that this omission prompts the Court to prevent the people of this state from voting on an enormously important policy question, one might assume that these 21 characters make up some critically important provision of this measure. One would be wrong. The 21 characters are the section numbers, which aren't part of the substantive law, which won't be codified,[21] and which in no way affect the reader's ability to understand the measure.[22]

Â¶14 Until now, we have always reviewed referendum petitions for substantial compliance,[23] and merely omitting 21 unimportant characters of text out of 80,000 is undoubtedly the sort of "technical" or "clerical" error that does not violate the substantial compliance standard.[24] Implicitly acknowledging as much, the Court resorts to changing the standard to one that it believes the petition cannot satisfy: "strict compliance."[25] In so doing, the Court disregards both statute and its own precedents, and does so unnecessarily.[26]

Â¶15 First, the law requires us to evaluate the "exact copy" requirement in title 34, section 1 of the Oklahoma Statutes by the same standard we use to evaluate every other procedural requirement in title 34: substantial compliance. Both sections 1 and 24 of title 34 tell us to do so,[27] and we have accordingly previously held that "substantial compliance" is how we evaluate compliance with the "exact copy" requirement.[28]

Â¶16 In In re Referendum Petition No. 1968-1 of City of Norman, the proponents attached a photocopy of the text of the measure, but reduced the size to where the words appeared in 4-point font--something about like this.[29] The petition was challenged on the grounds that this shrunken copy of the measure was not an "exact copy of the title and text of the measure."[30] In rejecting that claim, this Court said the following:

Certainly the reading of the ordinance as presented in the petition is tedious. Yet it is legible. We are unable to agree with the appellants' contention that a writing which is tiresome to read is ipso facto fraudulent, corruptive or deceptive. The issue is one of first impression and no standard for the size of type has heretofore been enunciated. The duty devolving upon the correlative legislative branch of government under Const. Art. 5 Â§ 8 causes this court to feel reluctant to adjudicate invalidity of this referendum petition on technical grounds, as technical errors are to be disregarded if the intended purpose can be attained. 34 O.S.1961, Â§ 24. Ruth v. Peshek, 153 Okl. 147, 5 P.2d 108. We must however, in conformance with the intent of the legislature, state that a 4 point type borders on the unreadable by those with some defect in eyesight and strains the visual acuity of the normal, and while not reversible error in the present case, it is discouraged.[31]

In other words, the Court (1) held that section 24's substantial compliance standard applied to section 1's new "exact copy" requirement, (2) acknowledged that Article V, Section 8 of the Oklahoma Constitution gave the Legislature only a limited role in policing referendum petitions and accordingly prevented the Court from invalidating a petition on "technical" grounds, and (3) held that a problem with the copy that made it "tedious" and "bordering on the unreadable" to some was not reason enough to invalidate the petition.

Â¶17 This petition should receive the same treatment, but it doesn't. The Court invalidates the petition because in its view omission of the measure's section numbers makes "internal navigation of the bill . . . excessively cumbersome"[32]--precisely the reasoning that the Court expressly rejected in the 1970 case. As we said there, the fact that something is copied in such a way as to make its reading "tedious," "tiresome," or " cumbersome" does not make it invalid. But the Court abandons this precedent with nary a mention, so we are left guessing why stare decisis was ignored in a case involving stare decisis of the strongest sort.[33]

Â¶18 Second, the Court's justifications for its brand new interpretations of sections 1 and 24 are unpersuasive. The Court first points to the fact that the Legislature added the "exact copy" language on the heels of one of our decisions as evidence that the Legislature intended to change the standard of review.[34] As explained above, though, we had an opportunity to interpret the new "exact copy" language before today in In re Referendum Petition No. 1968-1 of City of Norman, and concluded there that the standard of review for that requirement was still substantial compliance.[35]

Â¶19 But even if you ignore our precedent in In re Referendum Petition No. 1968-1 of City of Norman, the issue in that earlier case, In re Referendum Petition No. 130, was not whether the copy attached to the petition was sufficient or "exact" enough to satisfy the statutes. Rather, the question there was whether the statute required any copy at all.[36] We held in that case that no copy was required under the statute because there was no language to that effect in 1960.[37] But in 1961 the Legislature added language to require such a copy while leaving the language establishing the substantial-compliance standard in both sections 1 and 24 intact.[38] Accordingly, while I agree that, when the Legislature amended section 1 in 1961, it intended to change the state of the law with respect to what must be attached, I disagree that that amendment effected any change to the standard by which we measure compliance with that new requirement--as evidenced by the Court's decision in In re Referendum Petition No. 1968-1 of City of Norman.

Â¶20 The Court also invokes the "specific versus general" canon to conclude that the conflict between section 1's "exact copy" requirement and section 24's "substantial compliance" requirement should be resolved in favor of section 1, as that is the provision that specifically pertains to copies of the text of the measure.[39] There is no such conflict, however. Section 1 provides proponents with procedural requirements; it says, in relevant part, that they are to insert in the petition an exact copy of the text of the measure. Section 24, meanwhile, provides this Court with the standard by which to measure compliance with those procedural requirements; it says that we are to search for only substantial compliance and that we are to "disregard[]" clerical and technical errors. Only if section 1 required one standard and section 24 required another, would there be any need for us to resolve a conflict. But there is no conflict between these provisions; there is in fact harmony in that both endorse substantial compliance as the relevant standard--section 24 plainly saying so, and section 1 prefacing its procedural requirements with: "The referendum petition shall be substantially as follows . . . ." There is, quite simply, nothing in title 34--or our cases interpreting it--to suggest that the law requires anything more than substantial compliance.

Â¶21 Applying that venerable standard to this petition, the copy the proponents attached to this petition is more than sufficient. The function of inserting a copy of the text of the measure is to inform the people of the substance of the law being referred to them--to allow those most curious of signatories to know exactly what they're being asked to sign so that they may make an intelligent decision about whether to do so.[40] Here, the proponents inserted every word of the law proposed in HB 1010xx; they didn't change a single punctuation mark. Nor did they rearrange any parts of the law; they left the order of each section exactly the same. The only things missing from what they inserted, when compared to the Bill itself, are the page numbers of the bill, the signature blocks at the end, and the section numbers. Mind, however, that when we say "section numbers," what we mean is just the number itself. For example, the first section of the Bill reads:

SECTION 1.Â Â Â Â Â Â Â  Â NEW LAWÂ Â Â Â Â Â Â Â Â  A new section of law not to be codified in the Oklahoma Statutes reads as follows:

The provisions of this measure are enacted pursuant to the authority provided in Section 57 of Article V of the Oklahoma Constitution for a general revenue bill.[41]

The first section in the copy attached to the petition reads:

SECTION .Â Â Â Â Â Â Â Â Â  NEW LAWÂ Â Â Â Â Â Â Â Â  Â A new section of law not to be codified in the Oklahoma Statutes reads as follows:

The provisions of this measure are enacted pursuant to the authority provided in Section 57 of Article V of the Oklahoma Constitution for a general revenue bill.[42]

No one would say that the difference between these two texts hampers their ability to understand the proposed law. In fact, if I hadn't told you there was a difference, would you have even noticed?

Â¶22 To be sure, this petition may not comport with "best practice"[43]; but that shouldn't (and before now, wouldn't) make it insufficient. So long as a potential signatory can understand the nature and effect of the law from what he or she has been provided, then what has been provided should suffice. I have faith that the people of Oklahoma are more than capable of understanding the impact of this law after reading this petition, and thus--according to the law and our prior cases interpreting it--this petition should survive.

* * *

Â¶23 This referendum petition may well be imperfect--its ballot title will need correcting if it ever gets to that point, and the failure to include a copy of HB 1010xx containing section numbers was a regrettable oversight--but our Constitution doesn't require these things to be perfect.[44] It couldn't, because democracy is inherently imperfect. The cure for democracy's imperfections, however, is more democracy, not less. Accordingly, we should let the voters decide this one--it's their State, after all.[45]

Â¶24 I respectfully dissent.

FOOTNOTES

[1] 34 O.S.Supp.2017 Â§ 8(B) ("It shall be the duty of the Secretary of State to cause to be published, in at least one newspaper of general circulation in the state, a notice of such filing and the apparent sufficiency or insufficiency of the petition . . . ."); see id. Â§ 9(C)--(D) (charging the Attorney General with the responsibility of reviewing proposed ballot titles for "legal correctness").

[2] Okla. Sec'y of State, Notice of the Filing of State Question 799, Referendum Petition 25, App., Doc. 9, pp.1-3 ("NOTICE is also hereby given that State Question 799, Referendum Petition 25 is SUFFICIENT for filing with the Office of the Oklahoma Secretary of State."); Br. of the State of Oklahoma 15 (urging the Court to deny the protests so as "not [to] allow citizens seeking to petition their government for redress through referendum to 'be throttled with technicalities.'" (quoting Caruth v. State ex rel. Tobin, 1923 OK 980, Â¶ 13, 223 P. 186, 190)).

[3] See Okla. Indep. Petroleum Ass'n v. Potts, 2018 OK 24, Â¶Â¶ 6--10, 414 P.3d 351, 362--64 (Wyrick, J., concurring specially) (arguing that nothing in our Constitution or statutes authorizes our judge-made gist jurisprudence).

[4] See Majority Op. Â¶ 40.

[5] Okla. Const. art. V, Â§ 33(D) (prohibiting the Legislature from enacting revenue bills as emergency measures, and thereby excluding revenue bills from the exception to the referendum power in Article V, Section 2 for "laws necessary for the immediate preservation of the public peace, health, or safety").

[6] Signature Sheet for State Question 799, Referendum Petition 25, App., Doc. 1, p.39.

[7] All one need do is look at how news professionals--whose very job it is to summarize information for public consumption--describe the proposal. See, e.g., Kimberly Querry, Oklahoma Supreme Court Decides Petition to Repeal Tax Hikes Is Invalid, KFOR (June 22, 2018), https://kfor.com/2018/06/22/oklahoma-supreme-court-decides-petition-to-repeal-tax-hikes-is-invalid/ (describing the petition as a "petition to repeal tax hikes"); Petition to Repeal Tax Hikes Will Not Be on Ballot, Edmond Sun (June 22, 2018), http://www.edmondsun.com/ news/petition-to-repeal-tax-hikes-will-not-be-on-ballot/article_be604da2-7636-11e8-8c6d-ff335341 548d.html (same); Tim Talley, Oklahoma Supreme Court Voids Challenge to Teacher Pay Tax, Associated Press (June 22, 2018), https://www.apnews.com/ 465a14a23e4a496ba3f37833d931fef6 (describing the petition as "an initiative petition that would overturn a package of tax hikes"); Emily Wendler, Anxiety About Teacher Pay-Raises Grows as Tax Repeal Effort Builds and Legal Questions Mount, State Impact Oklahoma (June 14, 2018), https://stateimpact.npr.org/ oklahoma/2018/06/14/anxiety-about-teacher-pay-raises-grows-as-tax-repeal-effort-builds-and-legal-questions-mount/ (describing the petition as a "tax repeal effort"); Chris Casteel, Court Hears Challenges to Anti-Tax Campaign, Oklahoman, June 12, 2018, at 1A (repeatedly describing the petition as a "repeal" of "recent tax hikes," of a "tax package," or of a "tax bill"); Barbara Hoberock, Supreme Court Hears Tax Repeal Arguments, Tulsa World, June 12, 2018, at A1 (explaining the petition "ask[s] voters to repeal House Bill 1010xx"); Trevor Brown & Jennifer Palmer, Q&A: What You Need to Know About Challenge to Tax Rollback Petition, Oklahoma Watch (June 11, 2018), http://oklahomawatch.org/2018/06/11/ lawsuit-against-tax-rollback-petition-explained/ (describing the petition as a "tax rollback petition").

[8] 34 O.S.2011 Â§ 3.

[9] See Majority Op. Â¶Â¶ 27--34.

[10] Even if approved, the referendum cannot "re-animate" the hotel tax, because it has already been repealed. A referendum cannot enact new law; it can merely approve or disapprove the effectiveness of already-enacted legislation. Because of the repeal, "re-animation" of the hotel tax would require the enactment of new law, which--if attempted through direct democracy--can only be done through initiative petition.

[11] Br. of the State of Oklahoma 7--8. The majority also suggests that the proponents should have excluded the hotel/motel tax sections from their referendum. They certainly could have, but there is nothing in the law requiring them to do so. Moreover, the proponents have a good reason for including it in their referendum because, despite its repeal, disapproval of HB 1010xx through referendum makes it significantly more difficult for any initiative petition to seek re-enactment of the repealed provisions. Okla. Const. art. V, Â§ 6 ("Any measure rejected by the people, through the powers of the initiative and referendum, cannot be again proposed by the initiative within three years thereafter by less than twenty-five per centum of the legal voters."). Thus, inclusion of the hotel/motel tax provisions serves a purpose for these proponents, and we have no constitutional or statutory basis upon which to fault their decision to seek a referendum on all of HB 1010xx, rather than merely part of it.

[12] Signature Sheet for State Question 799, Referendum Petition 25, App., Doc. 1, p.39.

[13] See Webster's New International Dictionary 485 (2d ed. 1959) (defining "cigarette" as "[l]iterally, a little cigar").

[14] Okla. Tax Comm'n, Fiscal Impact Statement for HB 1010xx, at 1--2 (March 27, 2018), available at http://webserver1.lsb.state.ok.us/cf_pdf/2017-18%20SUPPORT %20DOCUMENTS/impact%20statements/fiscal/senate/HB1010XX%20ENG%20FI.PDF (calculating the expected additional revenue from the "little cigar" tax to be $954,000 out of an expected $474,696,000 from HB 1010xx as a whole).

[15] Webster's New International Dictionary, supra note 13, at 1060 (defining "gist" as "[t]he main point, or material part . . . ; the pith of the matter").

[16] Again, one need only look to how others have summarized the petition to understand that the hotel/motel and little cigar taxes are ancillary details that reasonable people readily omit from their descriptions of the proposal. Kimberly Querry, Leaders Release Statements About Oklahoma Supreme Court's Tax Repeal Decision, KFOR (June 22, 2018), https://kfor.com/2018/06/22/leaders-release-statements-about-oklahoma-supreme-courts-tax-repeal-decision/ (describing HB 1010xx as a bill that "raises taxes on cigarettes, motor fuels and some oil and gas production"); Wendler, supra note 7 (describing HB 1010xx as a "$430 million tax package, which includes tax increases on cigarettes, gasoline and oil and gas production"); Brown & Palmer, supra note 7 (stating the bill contained "tax increases on cigarettes, motor fuel and oil and gas production"); Oklahoma High Court Mulls Challenge to Tax for Teacher Pay, Associated Press (June 11, 2018), https://www.apnews.com/03f0755bd82e42469ba2d4ed93ac9f78 (describing the bill as "tax hikes on cigarettes, fuel and energy production"); Sean Murphy, Teachers' Group Seeks to Stop Oklahoma Anti-Tax Question, US News (May 14, 2018), https://www.usnews.com/news/best-states/oklahoma/articles/2018-05-14/ teachers-group-seeks-to-stop-oklahoma-anti-tax-question (describing the bill as "tax hikes on cigarettes, motor fuel and energy production"); Samuel Hardiman, Anti-Tax Petitioners, Teachers Organize for Fight, Tulsa World, May 10, 2018, at A3 (explaining that HB 1010xx "imposes an additional $1-per-pack cigarette tax, raises the gross production tax on new horizontal oil and gas wells from 2 percent to 5 percent, and raises fuel taxes by 3 cents per gallon on gasoline and 6 cents per gallon on diesel."); William W. Savage III, Teacher: Veto Referendum 'Feels Like an Attack on Public Education', NonDoc (May 1, 2018), https://nondoc.com/ 2018/05/01/veto-referendum-being-filed-hb-1010xx/ (explaining that HB 1010xx "raised the gross production tax incentive rate on oil and gas production from 2 percent to 5 percent, implemented a new $1-per-pack tax on cigarettes and raised the tax on gasoline $0.03 and the tax on diesel fuel $0.06.").

[17] 34 O.S.Supp.2017 Â§ 1.

[18] State Question 799, Referendum Petition 25, App., Doc. 1, p.1.

[19] See id. at pp.4--7.

[20] See Majority Op. Â¶ 21 (noting that the referendum petition mentions the little cigar tax but concluding that the gist is deficient because it and the petition "do not match").

[21] For example, if you visit the Court's website and look up the codified versions of the statutes enacted by HB 1010xx, you will find that section numbers are omitted. See, e.g., 68 O.S. 302-7 (effective July 19, 2018) (found at: http://www.oscn.net/ applications/oscn/DeliverDocument.asp?CiteID=482824) (containing the codified text of HB 1010xx's "Section 2" but omitting the non-codified portions, which include any reference to "Section 2"). I certainly don't think the Court is trying to "mislead" anyone by omitting the section numbers. Rather, they are omitted because they are not part of the substantive law.

[22] You'd be hard-pressed to derive any substantive meaning from the bill's section numbers. All of the law's substance--all of its impact on daily life--lies in the words that come after the section number. For example, it doesn't mean anything for the cigarette tax to be at "Section ."; "Section 2."; or Section 222 of this Bill. What matters to the signatories and to the future voters is that "there is hereby levied upon the sale, use, gift, possession or consumption of cigarettes . . . a tax at the rate of fifty (50) mills per cigarette." HB 1010xx, Â§ 2(A), 56th Leg., 2d Extra. Sess. (Okla. 2017); State Question 799, Referendum Petition 25, App., Doc. 1, p.3. It's that information that the people want and need in order to make an informed decision about whether to join in this petition, and it is that information that was provided here. Thus, again, because I think the purposes of the statute requiring the attachment of an "exact copy of the text of the measure" are satisfied by the copy of the text inserted in this petition, I see no reason to invalidate the entire referendum on a hyper-technicality.

[23] 34 O.S.Supp.2017 Â§ 1 ("The referendum petition shall be substantially as follows: . . . The question we herewith submit to our fellow voters is: Shall the following bill of the legislature (or ordinance or resolution--local legislation) be approved? (Insert here an exact copy of the text of the measure.)"); 34 O.S.2011 Â§ 24 ("The procedure herein prescribed is not mandatory, but if substantially followed will be sufficient. If the end aimed at can be attained and procedure shall be sustained, clerical and mere technical errors shall be disregarded.").

[24] 34 O.S.2011 Â§ 24.

[25] Majority Op. Â¶ 54.

[26] Given its invalidation of the petition on other grounds, the Court had no reason to reach the "exact copy" question.

[27] See supra note 23.

[28] See In re Referendum Petition No. 1968-1 of City of Norman, 1970 OK 143, Â¶ 5, 475 P.2d 381, 383 (citing 34 O.S.1961 Â§ 24).

[29] Id. Â¶ 4, 475 P.2d at 383.

[30] When the exact copy requirement was first added to section 1, it required an "exact copy of the title and text of the measure." Act of May 17, 1961, tit. 34, Â§ 1, 1961 O.S.L. 263, 264 (codified at 34 O.S.1961 Â§ 1). Section 1 was amended in 2015 to read "exact copy of the text of the measure." Act of April 28, 2015, ch. 193, Â§ 1, 2015 O.S.L. 635, 635 (codified at 34 O.S.Supp.2017 Â§ 1).

[31] In re Referendum Petition No. 1968-1 of City of Norman, 1970 OK 143, Â¶ 5, 475 P.2d at 383.

[32] Majority Op. Â¶ 54. HB 1010xx contains sixteen sections. One doesn't need to know the section numbers in order to understand the bill, but in any event, I am confident that the average voter can count to sixteen. So I disagree with the premise that failure to include section numbers makes the bill "excessively cumbersome" to navigate.

[33] See Bryan A. Garner et al., The Law of Judicial Precedents 333 (2016) (explaining that "[s]tare decisis applies with special force to questions of statutory construction. Although courts have power to overrule their decisions and change their interpretations, they do so only for the most compelling reasons--but almost never when the previous decision . . . has long been acquiesced in"). This is so because unlike constitutional interpretation, if a court erroneously interprets a statute, the Legislature is free to correct the error by amending the statute. When the Legislature does not, it is said to have acquiesced in the Court's interpretation of its statute. "Hence courts generally won't depart from a settled judicial interpretation of a statute even if the earlier holding is of questionable validity." Id. at 335 (citing Illinois Brick Co. v. Illinois, 431 U.S. 720, 736-37 (1977), for the proposition that "considerations of stare decisis weigh heavily in the area of statutory construction, where Congress is free to change th[e] Court's interpretation of its legislation . . . , even if the Court were persuaded" that the earlier decision was wrong, and citing Hill v. Atlantic & North Carolina Railroad, 55 S.E. 854, 868 (N.C. 1906), for the proposition that "an authoritative judicial construction put upon a statute has the force of law by becoming, as it were, a part of the statute itself").

[34] Majority Op. Â¶Â¶ 46--47 (discussing In re Referendum Petition No. 130, State Question No. 395, 1960 OK 185, 354 P.2d 400).

[35] See supra Â¶Â¶ 16-17 (discussing In re Referendum Petition No. 1968-1 of City of Norman,1970 OK 143, Â¶Â¶ 4-5, 475 P.2d at 383).

[36] In re Referendum Petition No. 130, 1960 OK 185, Â¶Â¶ 7, 10-11, 354 P.2d at 403-04.

[37] Id. Â¶ 8, 354 P.2d at 403.

[38] Act of May 17, 1961, tit. 34, Â§ 1, 1961 O.S.L. 263, 263--64.

[39] Majority Op. Â¶ 49.

[40] See Townsend v. McDonald, 42 S.W.2d 410, 412 (Ark. 1931) (explaining the purpose of Arkansas's precursor statute as follows:

The purpose of the section with regard to petitions for initiative measures is clear. The people could not intelligently act on an initiative measure, unless a copy of the measure itself was before them. The same reasoning would obtain in cases of a measure referred to the people. A full and correct copy of the measure attached to the petition would enable the signer thereto to act intelligently in the premises. Of course, he would not be required to read the measure, but it would be his duty to inform himself of its contents, and this would be a certain way for the signer to know that a different petition would not be presented from that signed by him. The signer would know that he was signing the measure passed by the Legislature, and was not taking the opinion of any one else as to the meaning of it.

[41] Act of March 29, 2018, ch. 8XX, Â§ 1, 2017 O.S.L. 1643, 1643.

[42] State Question 799, Referendum Petition 25, App., Doc. 1, p.3.

[43] Majority Op. Â¶ 52 n.12.

[44] Remember, the Legislature's only power with regard to referendum and initiative petitions is the power to make laws to "prevent corruption in making, procuring, and submitting initiative and referendum petitions." Okla. Const. art. V, Â§ 8. All other powers relating to referendum and initiative petitions are reserved to the People. Okla. Const. art. V, Â§ 1 ("The Legislative authority of the State shall be vested in a Legislature, consisting of a Senate and a House of Representatives; but the people reserve to themselves the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls independent of the Legislature, and also reserve power at their own option to approve or reject at the polls any act of the Legislature.").

[45] "The ultimate rulers of our democracy are not a President and Senators and Congressmen and Government officials, but the voters of this country." Franklin D. Roosevelt, Address at Marietta, Ohio (July 8, 1938) (transcript available at http://www.presidency.ucsb.edu/ws/?pid=15672).